## PICKETT *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF OKLAHOMA.

No. 270. Submitted January 3, 1910.—Decided February 21, 1910.

On the organization of a Territory into a State, Congress may—as it did by the Oklahoma enabling act—transfer the jurisdiction of general crimes committed in districts over which the United States retains exclusive jurisdiction from territorial to Federal courts, and may extend such jurisdiction to crimes committed before and after the enabling act. See *United States* v. *Brown*, 74 Fed. Rep. 43.

A statute creating a court to take jurisdiction of crimes will not be construed, if another construction is admissible, so as to leave a judicial chasm; and so held that under the Oklahoma enabling act the Federal court had jurisdiction of certain specified crimes committed after the enabling act was passed and before the State was admitted.

The reason of a law as indicated by its general terms should prevail over its letter when strict adherence to the latter will defeat the plain purpose of the law.

The granting or denying of a new trial is a matter not assignable as error. *Bucklin* v. *United States,* 159 U. S. 682.

An assignment of error that is double is bad for that reason.

Continuances are within the discretion of the trial court, and, in the absence of gross abuse, the action of the lower court will not be disturbed.

Assignments of error based on overruling objections to sufficiency of the indictment and of admission of any evidence because the indictment is bad cannot be made on writ of error for the first time.

Assignments of error for rejection or admission of evidence cannot be considered in absence of bill of exceptions. *Storm* v. *United States,* 94 U. S. 76.

THE facts are stated in the opinion.

No counsel appeared for plaintiff in error.

*Mr. Assistant Attorney General Harr* for the United States.

MR. JUSTICE LURTON delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of the United States for the Western District of Oklahoma, upon a conviction in a capital case, sued out by the plaintiff in error, the defendant below, by authority of the fifth section of the act of March 3, 1891, 26 Stat. 826, 827.

The plaintiff in error, Silas Pickett, a negro, was indicted in the District Court of the United States for the Western District of Oklahoma for the murder of a negro known as Walter, the Kid, within the limits of the Osage Indian Reservation. The indictment was remitted to the Circuit Court for the same

district as required by § 1039, Revised Statutes. This murder was charged as having been committed on October 14, 1907. The State of Oklahoma was admitted to the Union on November 16, 1907. The offense was, therefore, committed before its admission as a State, and for that offense the plaintiff in error was, after such admission, both indicted and convicted in a court of the United States for the Western District of Oklahoma—the Osage Indian Reservation being within that district. The jurisdiction of the court was challenged by motion to quash, by demurrer and by motion in arrest of judgment. Of course, if the offense was not one against the United States, or not committed within the territorial jurisdiction of the District Court for the Western District of Oklahoma, the indictment would be bad, and the court which tried and convicted the plaintiff in error, without jurisdiction. But the crime charged in this indictment was one against the United States. By § 5339 of the Revised Statutes, as amended by the act of January 15, 1897, c. 29, 29 Stat. 487, the crime of murder, when committed within any "place or district or country under the exclusive jurisdiction of the United States," is defined and the punishment provided. This general law was, by § 2145, Rev. Stat., extended "to the Indian Country," when not within one or the other of the exceptions of § 2146.

The averments of the indictment make it plain that the crime charged was committed within a "place or district" at that time exclusively under the jurisdiction of the United States, being Indian Country, not within any State. As it also averred that the plaintiff in error was a negro, and not an Indian, and the person slain a negro and not an Indian, the exceptions made by § 2145, Rev. Stat., do not apply.

The crime was charged to have been committed on October 14, 1907, a date subsequent to the enabling act of June 16, 1906, under which, on November 20, 1907, Oklahoma was admitted to the Union.

The jurisdiction of the District Court of the United States exercised in respect to the indictment and trial of this plaintiff

in error depends upon the provisions of that enabling act. Such a crime might have been prosecuted in the territorial court for the proper district of the Territory, sitting as a court of the United States and administering the law of the United States in the exercise of its jurisdiction conferred by Congress. *Ex parte Crow Dog,* 109 U. S. 556; *Brown* v. *United States,* 146 Fed. Rep. 975. But the function and jurisdiction of such territorial courts would naturally terminate upon the Territory becoming a State, and therefore render necessary some provision for the transfer of pending business and jurisdiction in respect of local matters to state courts and of civil and criminal business and jurisdiction arising under the laws of the United States to courts of the United States when they should come into existence. *Forsyth* v. *United States,* 9 How. 571, 576.

It was, therefore, altogether competent for Congress to provide, as it did in the 14th section of this enabling act, for the transfer of jurisdiction in respect of all crimes against the United States—for the act must be read as applying to crimes under the general criminal law of the United States—to the Federal courts provided by the same act. If this could not be done, the change from a territorial condition to that of a State would operate as an automatic amnesty for crimes committed against the general law of the United States within districts exclusively under its jurisdiction, and not within the jurisdiction of any State, for the court of the State could not be empowered to prosecute crimes against the laws of another sovereignty. *Martin* v. *Hunter,* 1 Wheat. 304, 337. The power to punish was not lost if the crime was one of the character described and the enabling act might well provide that such crime, committed either before or after the admission of the State, might be prosecuted in the courts of the United States when established within the new State. The subject is elaborately considered and decided by District Judge Marshall in *United States* v. *Baum,* 74 Fed. Rep. 43.

Section 13 of the enabling act referred to provides "that the State *when admitted* [italics ours] shall be divided into

two judicial districts," for the appointment of a district judge, clerk and marshal for each, and that the State should be attached to the Eighth Judicial Circuit. It provides also for the holding of regular terms of both the District and Circuit Courts, with all the powers and jurisdiction of similar courts. The fourteenth section was in these words:

"That all prosecutions for crimes or offenses hereafter committed in either of said judicial districts as hereby constituted shall be cognizable within the district in which committed, and all prosecutions for crimes or offenses committed before the passage of this act in which indictments have not yet been found or proceedings instituted shall be cognizable within the judicial district as hereby constituted in which such crimes or offenses were committed."

There may be some doubt as to whether the section set out should be construed as applying to crimes and offenses committed before and after the passage of the enabling act or only to such crimes committed before and after the admission of the State. The reference to "the passage of this act," in the second clause, would tend to the first construction. But such a construction would leave out of consideration the fact that neither the courts nor the judicial districts referred to would exist until the admission of the State by the express terms of the preceding section, which should be read in connection with the fourteenth section. No construction should be adopted, if another equally admissible can be given, which would result in what might be called a judicial chasm. Under the first interpretation, crimes committed after the passage of this enabling act could not be prosecuted until the admission of the State and the coming into existence of the courts and judicial districts, to which jurisdiction of such crimes was to be transferred. If such crimes could only be prosecuted in courts organized upon the admission of the State there would be an indefinite period during which such crimes might go unpunished. In fact, there elapsed seventeen months between the date of this enabling act and the admission of the State

and a consequent organization of the districts and courts to which jurisdiction over such crimes was to be transferred. A construction which might result in such deplorable consequences should not be adopted if any more sensible meaning can be reasonably given. The reason of the law, as indicated by its general terms, should prevail over its letter, when the plain purpose of the act will be defeated by strict adherence to its verbiage. Applications of this general rule are shown in *Holy Trinity Church* v. *United States*, 143 U. S. 457; *Lau Ow Bew* v. *United States*, 144 U. S. 47, 59; *United States* v. *Corbett*, 215 U. S. 233, decided at this term. The obvious intention was that this, like the preceding section, should become effective upon the State being admitted, and it should be read as applying to crimes and offenses before and after such admission. But if the section be otherwise construed, the District Court had in either case jurisdiction over this crime, for it was committed after the enabling act, and whether it might have been prosecuted in a territorial court sitting as a court of the United States before the admission of the State of Oklahoma, is not here important. It was not so prosecuted, and when the Territory ceased to be a Territory and became a State the jurisdiction of all such courts terminated, and jurisdiction was properly transferred to the courts of the United States having jurisdiction over the place of the crime.

There are a number of errors assigned. The first and tenth are for error in denying a new trial. The granting or denying of a new trial is a matter not assignable as error. *Bucklin* v. *United States*, 159 U. S. 682. The second assignment is double, and therefore bad; but it is without merit. The first error included is for overruling an objection to being tried at Oklahoma City. No such objection is shown by the record. The remainder is for denying a continuance. Continuances are within the discretion of the court, and unless great abuse is shown, the action of the court below will not be disturbed. As no bill of exceptions was taken, we have no showing of abuse upon which the action of this court may be invoked.

The third and fourth errors assigned are for overruling an objection made to the sufficiency of the indictment and to the admission of any evidence because the indictment was bad. No such objection is shown by the record. The indictment is not in form bad, nor vague, but charges the crime of murder with great particularity. There seems to have been no reason for doubt as to the crime charged. Besides, objections of this character cannot be made upon writ of error for the first time.

Aside from the question of jurisdiction, considered heretofore, the remaining assignments are for alleged errors in admitting or rejecting evidence. But as no bill of exceptions was taken, these assignments cannot be considered. *Storm* v. *United States*, 94 U. S. 76.

*Judgment affirmed.*