DARBY–LYNDE CO. v. ALEXANDER, Collector of Internal Revenue.

No. 407.

Circuit Court of Appeals, Tenth Circuit.
June 29, 1931.

Chas. P. Gotwals, of Muskogee, Okl. (John T. Gibson, Wm. A. Killey, and Jas. D. Gibson, all of Muskogee, Okl., on the brief), for appellant.

R. P. Hertzog, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

The Darby-Lynde Company brought this suit to recover an alleged over-payment of income taxes. The trial court sustained a demurrer to the petition. The essential facts set up in the petition follow.

Plaintiff is a Delaware corporation engaged in producing and marketing oil and gas, with its principal office and place of business in Oklahoma. At the beginning of the taxable period, January 1, 1926, plaintiff was the owner of certain oil and gas properties in Kansas, a part of which were producing and a part of which were non-producing. Such properties were acquired by plaintiff after February 28, 1913.

On July 1, 1926, plaintiff sold such properties to the Darby-Lynde Petroleum Company for one million dollars. In its original return for 1926, plaintiff claimed deduction for depletion based upon the income derived from the sale of oil and gas produced from such properties. Such return duly reflected the gross income derived from such sale. On May 26, 1927, plaintiff filed with the collector an amended return in which it sought to deduct a depletion allowance under sec. 204 (c) (2), Revenue Act of 1926, 44 Stat. 16, 26 USCA § 935(c) (2) based upon 27½% of the income derived from both the sale of such properties and the sale of oil and gas produced therefrom. The collector ignored such amended return and plaintiff was compelled to pay, under threats of distraint, a tax computed upon the basis of the original return. Thereupon, plaintiff duly filed a claim for refund of $35,072.81 based upon the disallowance of its amended claim

for depletion. The Commissioner rejected such claim.

Section 204, Revenue Act of 1926, 44 Stat. 14 (26 USCA § 935), provides in part as follows:

"(a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— * * *

"(b) The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property * * * or (B) the fair market value of such property as of March 1, 1913, whichever is greater. * * *

"(c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that—

"(1) In the case of mines discovered by the taxpayer after February 28, 1913, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter. * * *

"(2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph."

Section 234, Revenue Act of 1926, 44 Stat. 41, 26 U. S. C. A. § 986(a) (8), provides in part as follows:

"(a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(8) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be

equitably apportioned between the lessor and lessee."

Counsel for plaintiff contend that the language "gross income from the property during the taxable year," as used in section 204 (c) (2), supra, includes both operating income derived from the production and sale of oil and gas, and income derived from the sale of the oil and gas properties.

█ In the Revenue Act of 1913 and in each of the revenue acts since enacted, Congress has provided for some allowance for depletion in case of operating mines and oil and gas wells [26 USCA § 986 (8) and note]. By such provisions for a depletion allowance in the case of oil and gas wells, Congress recognized that oil and gas reserves are wasting assets and become exhausted through the process of producing oil and gas. The depletion charge, permitted as a deduction from gross income in determining taxable income, represents the reduction during the taxable year through the production of oil and gas from such wells, in the total deposit or reserve of oil or gas which may be captured thereby and produced therefrom. United States v. Ludey, 274 U. S. 295, 302, 303, 47 S. Ct. 608, 71 L. Ed. 1054; Lynch v. Alsworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660.

█ The primary rule in the construction of statutes is to ascertain and give effect to the intent of the legislative body. Stevens v. Nave-McCord Merc. Co. (C. C. A. 8) 150 F. 71, 75; Balanced Rock S. A. v. Manitou (C. C. A. 10) 38 F.(2d) 28, 30; Moffat Tunnel Imp. Dist. v. Denver & S. L. R. Co. (C. C. A. 10) 45 F.(2d) 715, 723. Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, resort must not be had, ordinarily, to rules of construction, but the statute must be given its plain and obvious meaning. United States v. Mo. Pac. R. Co., 278 U. S. 269, 277, 49 S. Ct. 133, 73 L. Ed. 322; Duke Power Co. v. Commissioner (C. C. A. 4) 44 F.(2d) 543; Eclipse Lumber Co. v. Iowa Loan & T. Co. (C. C. A. 8) 38 F.(2d) 608, 610. Where however the language is of doubtful meaning, or where adherence to the strict letter would lead to injustice or absurdity or result in contradictory provisions, it devolves upon the court to ascertain the true meaning. United States v. Katz, 271 U. S. 354, 357, 46 S. Ct. 513, 70 L. Ed. 986; In re Chapman, 166 U. S. 661, 667, 17 S. Ct. 677, 41 L. Ed. 1154; United States v. Kirby, 7 Wall. 482, 486, 487, 19 L. Ed. 278. The general design and purpose of a statute should be kept in mind and its provisions should be given a fair and reasonable construction with a view to effecting its purpose and object. Low Wah Suey v. Backus, 225 U. S. 460, 475, 32 S. Ct. 734, 56 L. Ed. 1165; Takao Ozawa v. United States, 260 U. S. 178, 194, 43 S. Ct. 65, 67 L. Ed. 199; Feitler v. United States (C. C. A. 3) 34 F.(2d) 30, 33.

In Stevens v. Nave McCord Mercantile Co., supra, the court, speaking through Judge Sanborn, said:

"Cardinal rules for the construction of a statute are that the intention of the legislative body which enacted it should be ascertained and given effect, if possible, regardless of technical rules of construction and the dry words of the enactment; that that intention must be deduced not from a part but from the entire law; that the object which the enacting body sought to attain and the evil which it was endeavoring to remedy may always be considered for the purpose of ascertaining its intention; that the statute must be given a rational, sensible construction; and that, if this be consonant with its terms, it must have an interpretation which will advance the remedy and repress the wrong."

█ It frequently happens that the true intention of a legislative body is not expressed by the language employed in a statute, when literally construed. In such cases, the intent of such legislative body can only be effectuated by a departure from a literal interpretation of the language employed. Where such intention is plainly discernible from the provisions of the statute when considered as a whole, the real purpose and intent of the legislative body will prevail over the literal import of the words employed. Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; United States, for Use of Hill v. American Surety Co., 200 U. S. 197, 203, 26 S. Ct. 168, 50 L. Ed. 437; Jones v. New York Guaranty & I. Co., 101 U. S. 622, 626, 25 L. Ed. 1030; Barrett v. Van Pelt, 268 U. S. 85, 90, 45 S. Ct. 437, 69 L. Ed. 857; Fleischmann Const. Co. v. United States, 270 U. S. 349, 360, 46 S. Ct. 284, 70 L. Ed. 624; Baltzell v. Mitchell (C. C. A. 1) 3 F.(2d) 428, 430; London & L. I. Co. v. Smoot, 52 App. D. C. 378, 287 F. 952, 956.

█ It is obvious that, as in prior Revenue laws, Congress intended by section 204 (c) (2) to provide an allowance for the exhaustion of oil and gas reserves resulting through the operation of oil and gas wells and the extraction of oil and gas therefrom.

We have a right to assume that Congress intended to provide a basis for ascertaining such allowance predicated on factors bearing a reasonable relation to the amount of depletion or exhaustion resulting from the operation of such oil and gas wells, and to adopt a rule which would lead to a rational rather than an absurd result.

Let us apply plaintiff's theory to four supposititious cases. Assume two oil and gas properties each of which, for the purpose of ascertaining profit from sale for income tax purposes, cost $4,000,000, and that each was worth $10,000,000 on January 1, 1926. Assume, in the first case, that the owner operated his property for three months, exhausted 4% of the oil reserve, received an operating income of $400,000 and then sold the property for $9,600,000, making a profit of $5,600,000. Assume, in the second case, that the owner operated his property for six months, exhausted 8% of the oil reserve, received an operating income of $800,000 and then sold the property for $9,200,000, making a profit of $5,200,000. Note that the selling price in each instance was the value on January 1, 1926, less the oil and gas produced during that year prior to the sale.

Applying plaintiff's theory to the first case, the depletion allowance would be 27½% of the $400,000 operating revenue plus the $5,600,000 profit derived from the sale, or $1,650,000. Applying plaintiff's theory to the second case, the depletion allowance would be 27½% of the $800,000 operating income plus the $5,200,000 from the sale, or $1,650,000.

In the first case, the taxpayer would receive a depletion allowance of $1,650,000 for a $400,000 exhaustion. In the second case, the taxpayer would receive a $1,650,000 depletion allowance for a $800,000 exhaustion. The depletion allowances in both cases would be the same, but the actual exhaustion in the second case would be double that in the first case.

Again, let us assume, as a third case, that the taxpayer operated his property for the entire year and exhausted 16% of his reserve, for which he received an operating income of $1,600,000. His depletion allowance would be $440,000. His sustained depletion would be four times that of the taxpayer in the first case, while his allowed depletion would be $1,210,000 less.

Finally assume, in the first case, that the purchaser continued to operate the property during the last nine months of the year and exhausted 12% of the oil reserve, and received an operating income of $1,200,000. He would be entitled to a depletion allowance of 27½% of such operating income, or $330,000. In the first case, the total depletion allowance would be $1,980,000 and in the third case $440,000, while the actual depletion in both cases would be the same.

Thus, it will be seen that the construction for which plaintiff contends would lead to absurd and unreasonable results. The reason for such results is that plaintiff's theory takes into consideration income derived from an act which does not in fact deplete the oil and gas reserves, and includes in the formula for computing depletion a factor which has no reasonable relation to the depletion actually sustained.

In order to reach a reasonable and rational result, the words "gross income" as used in sec. 204 (c) (2) must be construed as meaning the gross income produced from the operation of such oil and gas wells. The language is clearly susceptible of the construction that it is income from or out of the property itself; not out of its sale.

The legislative history of the 1926 act confirms this view. In the Revenue Acts of 1921 and 1924, in cases of oil and gas wells, Congress had provided, with certain limitations, for a depletion allowance based upon discovery value. See section 214 (a) (10) and section 234 (a) (9), Revenue Act of 1921 (42 Stat. 241, 256) and section 204 (c), Revenue Act of 1924 (26 USCA § 935 note). When Congress wrote the provision for depletion allowance in the case of oil and gas wells in the Revenue Act of 1926, it departed from the discovery value basis because of the difficulty of administration. The discussions before the Senate Finance Committee, where the amendment which ultimately became section 204 (c) (2), 26 USCA § 935 (c) (2) originated, discloses that the framers of this legislation had in mind operating income as distinguished from income derived from sales. See report of hearings before that committee, pages 153, 154, 177 and 179.

We conclude that the words "gross income," as used in section 204 (c) (2), supra, mean income derived from the sale or other disposition of oil and gas produced, and not from the sale of the oil and gas properties.

The judgment is affirmed.