### UNITED STATES v. KELLY.

#### Civ. No. 3042.

United States District Court,
E. D. Oklahoma.

June 14, 1952.

Edwin Langley, U. S. Atty., Muskogee, Okl., J. W. Crawford, Asst. U. S. Atty., Muskogee, Okl., for plaintiff.

Harry G. Davis, Muskogee, Okl., Forrester Brewster, Muskogee, Okl., for defendant.

RICE, Chief Judge.

This cause came on for trial at Muskogee, Oklahoma, on May 5, 1952. The Court, after hearing the evidence, directed that the parties file briefs, and having considered the briefs now makes the following findings of fact and conclusions of law:

1. The defendant, Arthur L. Kelly, was and is the sole owner and operator of a private stockyard in Muskogee, Oklahoma, from which he sells all livestock purchased by him. He has no other place of business.

2. The defendant at the time of purchasing the livestock hereinafter referred to was not registered or bonded under the Packers and Stockyards Act.

3. The stockyards located at Hominy, Oklahoma, Pawhuska, Oklahoma and Coffeyville, Kansas, were at all times hereinafter mentioned "posted" stockyards under the provisions of the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. 181 et seq. (hereinafter referred to as "the Act").

4. Each of said stockyards were privately owned and exclusively operated one day a week as a public auction by the stockyards owner as a single market agency. Each of said owners and operators is reg-

istered and bonded under the provisions of the Act. Said stockyards do not furnish services other than an agency for sale on the single day of each week.

5. All livestock delivered to said stockyards by individual owners is offered for sale at public auction and sold by the market agency operating said stockyards as agent for the owner, said agency receiving a commission on the sales. Said market agency places a base, or holding bid, and if a higher bid is not received when said livestock is offered at public auction, the market agency becomes the owner of the livestock for the base bid.

6. The defendant, either individually or through an agent, purchased swine at the Hominy public auction held at the stockyards in Hominy, Oklahoma, as follows:

| Date | No. | Species | Amount |
| --- | --- | --- | --- |
| 1950 | | | |
| November 10 | 46 | Swine | $1,982.34 |
| November 17 | 20 | Swine | 847.13 |
| November 24 | 18 | Swine | 719.91 |
| December 1 | 24 | Swine | 1,189.21 |
| December 8 | 13 | Swine | 717.38 |

7. The defendant, either individually or through an agent, purchased swine at the Pawhuska public auction held at the stockyards in Pawhuska, Oklahoma, as follows:

| Date | No. | Species | Amount |
| --- | --- | --- | --- |
| 1950 | | | |
| November 25 | 104 | Swine | $3,366.80 |
| December 2 | 43 | Swine | 1,900.24 |
| December 30 | 31 | Swine | 1,382.92 |
| 1951 | | | |
| April 14 | 87 | Swine | 4,169.55 |

8. The defendant, either individually or through an agent, purchased swine at the Coffeyville, Kansas, public auction held at the stockyard in Coffeyville, Kansas, as follows:

| Date | No. | Species | Amount |
| --- | --- | --- | --- |
| 1951 | | | |
| March 31 | 192 | Swine | $8,711.30 |
| April 7 | 59 | Swine | 2,924.24 |
| May 12 | 71 | Swine | 3,090.37 |
| May 19 | 214 | Swine | 9,469.89 |

9. All swine purchased as aforesaid by the defendant were delivered to the defendant's trucks and forthwith removed from the respective stockyards.

10. After making the purchases, the defendant concentrated the swine at his place of business in Muskogee, Oklahoma, and thereafter transported them from Muskogee, Oklahoma, for resale to other points in Oklahoma and outside of Oklahoma. He is primarily engaged in the buying and selling of livestock and the bulk of his purchases are made for resale. Some of his resales were made at the posted stockyards located at Hominy and Pawhuska, Oklahoma, and Coffeyville, Kansas, as well as other posted stockyards situated in Oklahoma and other states.

11. Other than the transactions above set out, the defendant has received or furnished no service and has in no way been connected with the operation of the stockyards, or either of them.

12. For the purchase of all swine by the defendant he paid cash, or its equivalent, to the market agencies operating each of said stockyards.

13. The defendant purchased no livestock from a producer or farmer.

14. The activity of the defendant in purchasing livestock from the posted stockyards at Hominy and Pawhuska, Oklahoma, and Coffeyville, Kansas, was not limited to the dates alleged in the complaint, but defendant was a frequent purchaser at these stockyards and, on occasions, sold livestock through each of the stockyards, and the defendant was a frequent purchaser from other posted stockyards in Oklahoma and neighboring states.

15. The defendant was called upon by the agency charged with the enforcement of the Act to register as a dealer in accordance with the provisions of the Act by reason of his activities aforesaid, but defendant has failed to register and post a bond as demanded. The defendant was formerly registered as a dealer and market agent. His registrations were for the periods October 7, 1936 to March 18, 1938, and from March 2, 1945 to April 25, 1947.

16. From the date of the passage of the Act the officers and officials charged with

the enforcement of the Act have considered that one engaged in activities such as the defendant is a "dealer" within the meaning of the Act.

### Conclusions of Law

1. This action arises under the Packers and Stockyards Act of 1921, as amended, 7 U.S.C.A. 181, et seq., and this Court has jurisdiction.

2. Section 201(d) of said Act provides as follows:

> "The term 'dealer' means any person, not a market agency, engaged in the business of buying or selling in commerce livestock at a stockyard, either on his own account or as the employee or agent of the vendor or purchaser."

3. The power of Congress to regulate Packers, Stockyards and Dealers, has been upheld as a valid regulation of interstate commerce. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735.

4. In 1926 the then Attorney General, in an opinion to the Secretary of Agriculture, advised that the term "dealer" as used in the Act includes persons regularly employed on salary by packers to buy livestock for the latter for slaughter. The Circuit Court of Appeals (7th Circuit) held to the contrary. United States v. Roberts & Oake, 65 F.2d 630. Although the Attorney General was dealing with the problem of whether or not a packer was also a dealer, the language of his opinion is enlightening as to the general purposes of the Act, and much of it is applicable to the facts herein. The defendant relies to a great extent upon United States v. Roberts & Oake, supra. In my judgment, United States v. Roberts & Oake is not controlling under the facts of this case.

5. Defendant is not a "market agency." He is engaged in the business of buying and selling in commerce livestock at a stockyard. His activities come literally within the provision of Section 201(d) of said Act. To hold otherwise would be to ignore completely the definition of a "dealer" as prescribed by Congress.

6. The defendant having failed to register and post bond, as required by said Act, is subject to the imposition of a penalty provided by the Act and to be enjoined from carrying on the business of a dealer in interstate commerce within the meaning of said Act.

Attorney for the plaintiff will prepare an appropriate decree in conformity with the foregoing Findings of Fact and Conclusions of Law and present the same to the Court for signing and entry at Muskogee, Oklahoma, at 9:30 A.M., on the 30 day of June, 1952, at which time the Court will fix and assess the amount of the penalty to be imposed.