## KELLEY v. UNITED STATES.
### No. 4558.
United States Court of Appeals
Tenth Circuit.
March 12, 1953.

Forrester Brewster, Muskogee, Okl., and Lawrence M. Wood, Denver, Colo. (Harry G. Davis, Muskogee, Okl., on the brief), for appellant.

Neil Brooks, Special Asst. to the Atty. Gen. (J. Stephen Doyle, Jr., Sp. Asst. to the Atty. Gen., Edwin Langley, U. S. Atty., J. W. Crawford, Asst. U. S. Atty., Muskogee, Okl., Donald A. Campbell and John L. Currin, Attorneys, U. S. Department of Agriculture, Washington, D. C., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

The question in this case is whether appellant, Arthur L. Kelley, the owner and operator of a private stockyard, not subject to the provisions of the Packers and Stockyards Act, 7 U.S.C.A. § 181 et seq., herein referred to as the Act, was required to register and give bond as required under its provisions because of his purchase of livestock at stockyards "posted" under the provisions of the Act.

The Act required the Secretary of Agriculture to post stockyards falling within its provisions by posting appropriate notices on the stockyard premises. Section 201 defines two agencies falling under the provisions of the Act. These are "marketing agencies" and "dealers". A

marketing agency is defined as "any person engaged in the business of (1) buying or selling in commerce livestock at a stockyard on a commission basis * * *." Under this classification fall those concerns or persons of whom we generally speak as commission men or commission houses. They both buy and sell livestock for customers for which service they charge a commission. Had Congress intended to limit the application of the Act to such concerns standing in somewhat of a fiduciary relationship, no further definition or designation of a dealer would have been required. But Congress went further and placed dealers in a separate category from marketing agencies or commission men. It defined them as meaning "any person, *not a market agency,*[1] engaged in the business of buying or selling in commerce livestock at a stockyard, either on his own account or as the employee or agent of the vendor or purchaser." Thus as defined in the Act, the terms "marketing agency" and "dealer" are not synonymous. Under the plain language of Subsection (d) a dealer cannot be a commission agency. If he buys or sells on a commission basis, he is a marketing agency and not a dealer. It is only when he engages in business other than on a commission basis and buys or sells livestock for himself or as the employee or agent of the vendor or purchaser that he becomes a dealer subject to the terms of the Act.

So far as material, Section 203 of the Act makes it a public offense for any person to carry on the business of a dealer "at such stockyard unless he has registered with the Secretary under such rules and regulations as the Secretary may prescribe, his name and address, the character of business in which he is engaged * * *."

The complaint under which appellant was tried and convicted charged that on five separate dates between November 10, 1950, and December 8, 1950, he engaged in violating the provisions of the Act as a dealer within the meaning of the Act in the business of buying livestock in interstate commerce, by buying livestock as a dealer at a posted stockyard known as Hominy Sale, Hominy, Oklahoma, without having registered with the Secretary of Agriculture and without furnishing bond as required by the Act. A second count charged four similar violations between November 25, 1950, and April 14, 1951, at a posted stockyard known as Pawhuska Auction, Pawhuska, Oklahoma, and a third count charged four additional violations between March 31, 1951, and May 19, 1951, at a posted stockyard known as Coffeyville Stockyard, Coffeyville, Kansas. Trial was had to the court. It made findings of fact and conclusions of law and based thereon adjudged the appellant guilty as charged.

There is no dispute in the evidence and the only question is whether the admitted operations of appellant bring him within the ambit of the statute. Appellant was the sole owner and operator of a private stockyard in Muskogee, Oklahoma, from which he sells all livestock purchased by him. He had no other place of business. His stockyard was not subject to the provisions of the Act. On the thirteen occasions alleged in the complaint he purchased 922 swine at these three stockyards for which he paid a total sum of $40,471.28. He also made similar purchases of livestock at other posted stockyards on other dates. Each of these three stockyards was a qualified stockyard and was properly posted as required by the Act. The owners and operators of each of these stockyards were registered and bonded under the provisions of the Act. All livestock delivered to these stockyards by individual owners are offered for sale at public auction and sold by the marketing agency operating the yards as agent for the owners, the agency receiving a commission on the sales. Appellant either individually or through an agent purchased the livestock on these thirteen dates. After making the purchases, the livestock was taken to his place of business in Muskogee, Oklahoma, and thereafter was transported from Muskogee, Oklahoma, for resale to other points in Oklahoma and outside of Oklahoma.

---

1. Emphasis supplied.

■ The sole question in the case is whether appellant was a dealer as defined in the Act. The trial court found he was and we think the finding is amply supported by the record. As pointed out, a dealer is defined in the Act as one engaged in the business of buying or selling in commerce livestock as a stockyard, either on his own account or as agent of another. "Business" is a comprehensive term. It has been defined as that which "occupies the time, attention and labor of men for the purpose of a livelihood or profit." [2] The Act does not require that a dealer in order to come under the Act be engaged in the sole business of buying or selling livestock in commerce. These thirteen purchases of 922 hogs, involving an expenditure of $40,471.28 over a period of seven consecutive months, constituted more than mere isolated transactions. They chart a well defined course of business. As far as the record reveals, it was the only business he had. He had his own stockyard to which he took this livestock and from which he distributed it by sale to various points both intra and interstate. The court found that his activities were not limited to these thirteen occasions but that he frequently purchased livestock at these posted yards and that he also at frequent intervals purchased livestock at other posted yards and on occasion sold livestock through these posted yards.

■ Discussions of incidental questions such as that he did not avail himself of or furnish any facilities or services at the stockyards, as defined in the Act, or that he did not act for the vendor or owner of any livestock, or collect or receive a commission for the handling of any livestock for another are immaterial and do not obscure the salient fact that appellant was engaged in the business of buying and selling livestock in commerce, as found by the court, and that he carried on these activities at posted stockyards without complying with the mandatory requirements of the Act as it relates to a dealer, such as he was.

The case of United States v. Roberts and Oake, 7 Cir., 65 F.2d 630, on which appellant places strong reliance is neither in point nor persuasive. There, the Secretary sought to compel a meat packer to comply with the provisions of the Act requiring a bond from a dealer. The Act does not require such a bond from a packer. All that case is authority for is that a packer is not a dealer under the Act and is, therefore, not required to give a bond.

Appellant has filed a motion for the assessment of costs to appellee in the event the judgment appealed from is affirmed. This motion is predicated on the ground that the designation of the record as made by appellant and filed in court contains all that is necessary to present all questions involved in the appeal and that, therefore, the counter-designation by appellee was unnecessary.[3]

■ Appellant's designation consists of one page of evidence in narrative form and seven pages of evidence in question and answer form. Appellee, in its counter-designation, designated all the remaining evidence in question and answer form. A cursory examination of appellant's designation establishes that it did not contain all the evidence necessary to a consideration of the question presented by the appeal. It contained none of the evidence establishing that interstate commerce was

2. Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460; See also Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389.

3. Amended Rule 16 of the Revised Rules of this court, so far as material, provides that when appellant has filed his designation of record as provided therein, appellee may within 10 days after service of the designation upon it, designate in writing filed with the clerk such additional parts of the record to be printed as it thinks material. If appellant, after examination of such additional designation, certifies that the whole or any part of the material requested by appellee in the additional designation is unnecessary, appellee will be required to advance the costs for the printing of the additional designation. Thereafter, upon motion of either party the court shall upon final determination assess costs for the printing of unnecessary portions of the record according to right and justice.

in issue. Neither did it contain all the evidence in the record bearing upon the character of appellant's business. While the record contains evidence showing that appellant on 13 separate occasions purchased 922 swine of a total value of $40,471.28, none of this evidence is revealed in appellant's designation other than by a mere statement that appellant purchased swine at these stockyards as itemized in exhibits attached to the complaint. There was also considerable evidence that appellant on numerous other occasions purchased and sold livestock at these and other posted stockyards. All this, as well as other evidence, had a material bearing on whether appellant was engaged as a dealer under the Act in the business of buying and selling livestock at posted stockyards. These references to such evidence are sufficient to show that appellee was warranted, in fact was under the necessity of making a counter-designation of the record to be printed for consideration on the appeal.

 Since at least some parts of appellee's counter-designation were proper, appellant was not warranted in certifying that "the whole of the material requested by appellee in his additional designation of record to be printed is unnecessary." If parts of the counter-designation were unnecessary, it was appellant's duty under the rule to point out the unnecessary parts of the counter-designation. Having failed to do this, he is not in position to ask this court to do his work and make the segregation for him.

The motion to assess costs to appellee is denied and the judgment appealed from is affirmed.

PICKETT, Circuit Judge, dissenting.

The defendant in this case was engaged in the business of buying and selling livestock. The stockyards located at Hominy,

Oklahoma, Pawhuska, Oklahoma, and Coffeyville, Kansas, were required to qualify under the Packers and Stockyards Act of 1921, as amended, 7 U.S.C.A. § 181, et seq. Each was privately owned, and operated a public auction of livestock one day a week. Each stockyard furnished no services other than an agency for the sale of livestock the day of the sale. The defendant attended these auctions on different dates and purchased for himself livestock which he paid for in cash or its equivalent. He accepted delivery of the livestock at the place of purchase and later resold them. The defendant did not receive or furnish any services, and was in no way connected with the operation of the stockyards.

The Act defines a dealer as a person "engaged in the business of buying or selling in commerce livestock at a stockyard". 7 U.S.C.A. § 201. A person in the business of buying or selling livestock for himself, having no connections with the stockyards other than as a buyer or seller, may appear to be within the letter of the statute defining a dealer. A thing may, however, be within the letter of the statute and still not within the statute because not within its spirit nor within the intention of the lawmakers. Markham v. Cabell, 326 U.S. 404, 409, 66 S.Ct. 193, 90 L.Ed. 165; Sorrells v. United States, 287 U.S. 435, 446, 53 S.Ct. 210, 77 L.Ed. 413; Pickett v. United States, 216 U.S. 456, 461, 30 S.Ct. 265, 54 L.Ed. 566; Holy Trinity Church v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226; Darby-Lynde Co. v. Alexander, 10 Cir., 51 F.2d 56,[1] certiorari denied 284 U.S. 666, 52 S.Ct. 40, 76 L.Ed. 564. In determining the intent of Congress, we may look to the purpose of the Packers and Stockyards Act. The Act was not designed to protect those furnishing services for hire in the stockyards but to protect the public and those buying or selling

---

1. In the Darby-Lynde Co. v. Alexander case, we said 51 F.2d at page 58:
 "It frequently happens that the true intention of a legislative body is not expressed by the language employed in a statute, when literally construed. In such cases, the intent of such legislative body can only be effectuated by a departure from a literal interpretation of the language employed. Where such intention is plainly discernible from the provisions of the statute when considered as a whole, the real purpose and intent of the legislative body will prevail over the literal import of the words employed."

through such agencies, against losses and unfair practices. What protection will be furnished to such persons or the public if this defendant, as a purchaser of livestock for himself, is required to register and furnish a bond? He has paid for the stock, owns it, and may dispose of it, as he sees fit. There is no one to whom he can be in default, and no one can benefit from his registration or recover from his bondsman. As a purchaser, he is one of a class that the Act was designed to protect.

A large portion of the livestock shipped to stockyards for sale is consigned to commission agents and other dealers doing business in the stockyards who have authority to represent livestock owners and shippers in the disposition of livestock. These agents and dealers act in a fiduciary capacity. They sell the livestock for these owners and shippers and account to them for the proceeds. These are the agencies and are the buyers or sellers that the Act refers to. It is these agencies that Congress intended to affect, when it defined "dealer" as one engaged in buying or selling livestock at a stockyards. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L. Ed. 735.

In United States v. Roberts & Oake, 7 Cir., 65 F.2d 630, the court considered the question of whether the Act applied to a packer which purchased livestock at a posted stockyards. Although reference was made to the fact that the defendant was a packer also regulated by the Act, the court reasoned that it would serve no useful purpose to require a packer which did no more than purchase livestock for itself to register as a dealer under the Act. It was there said, 65 F.2d at pages 631–632:

"The dealer is usually a commission man who acts as the agent of the seller. He collects the money from the buyer (the packer) and remits it to the shipper. To secure his prompt remittance, the Secretary may exact a bond. But why should the purchaser execute a bond? He does not collect any money, nor is he entrusted with the handling of the livestock after arrival at the stockyard and before its sale. From the very nature of the business it is necessary that the buyer personally examine the livestock offered for sale by the dealer in order that he may determine its quality, price, etc., but that does not make him a dealer."

As a purchaser of livestock the packer was in no different position than the defendant.

To extend the requirements of this Act to all persons who buy or sell livestock at posted stockyards in sufficient quantities to constitute doing business, regardless of whether they have any connection with the stockyards or the disposition of livestock therein, except as a buyer or seller for themselves, appears to me to extend the jurisdiction of the Secretary of Agriculture to a class which was never intended to be covered by the Act and would accomplish no useful purpose. I would reverse the judgment.