**G. J. AMSHOFF et al., Petitioners,**

**v.**

**UNITED STATES of America, and Ezra Taft Benson, Secretary of Agriculture of the United States, Respondents.**

**No. 11256.**

United States Court of Appeals
Seventh Circuit.

Dec. 13, 1955.

Rehearing Denied Jan. 17, 1956.

H. Templeton Brown, Robert L. Stern, Chicago, Ill., for petitioners. Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.

Donald A. Campbell, Atty., U. S. Dept. of Agriculture, Washington, D. C., Robert W. Johnson, Chicago, Ill., J. Stephen Doyle, Jr., Neil Brooks, Sp. Assts. to the Atty. Gen., John L. Currin, Atty., U. S. Dept. of Agriculture, Washington, D. C., for respondents.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Petitioners have invoked the jurisdiction of this court under the Hobbs act.[1]

Their petition was filed herein on August 26, 1954, and expresses its purpose as seeking a review of a final order promulgating section 201.10(c) of the regulations issued on July 19, 1954, by the secretary of agriculture under the packers and stockyards act, but not sections 309(e) and 317 thereof.[2]

There are two groups of petitioners: first, various named firms (referred to as packer petitioners), who are engaged in the purchase of livestock in commerce on the Union Stockyards in Chicago or on other public stockyards subject to regulation under the packers and stockyards act, and secondly, Amshoff and other individuals named who are persons employed by packer petitioners in the purchase of livestock in commerce at said stockyards, (referred to as packer-buyers).

The petition charges that on July 19, 1954 the secretary of agriculture promulgated revised regulations under the packers and stockyards act, and that section 201.10(c) provides that:

"(c) Any person regularly employed on salary, or other comparable method of compensation, by a packer to buy livestock at posted stockyards for such packer shall be subject to the registration requirements of the act and the regulations in this part. Such persons shall be registered as dealers to purchase livestock for slaughter only."

The petition makes the following "statement of legal position": "The regulation requiring packer buyers to register and subjecting them to the regulations issued by the Secretary of Agriculture is not authorized by the Packers and Stockyards Act, since packer buyers are not 'dealers' within the meaning of that Act."

The packers and stockyards act[3] defines the term "dealer" as "any person, not a market agency, engaged in the business of buying or selling in commerce livestock at a stockyard, either on his own account or as the employee or agent of the vendor or purchaser."

Section 303 of the same act[3a] in its pertinent parts provides: " * * * no person shall carry on the business of a market agency or dealer at such stockyard unless he has registered with the Secretary under such rules and regulations as the Secretary may prescribe, his name and address, the character of business in which he is engaged, and the kinds of stockyard services, if any, which he furnishes at such stockyard."

By a signed stipulation filed in this court, the parties hereto have agreed upon the following facts, *inter alia:*

Packer-buyers are registered by the department as dealers to buy livestock for slaughter only, on salary or other comparable method of compensation. Specifically, packer-buyers are referred to in

1. "The court of appeals shall have exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of, all final orders (a) of the Federal Communications Commission made reviewable in accordance with the provisions of section 402(a) of Title 47, and (b) of the Secretary of Agriculture made under the Packers and Stockyards Act, 1921, as amended, and under the Perishable Agricultural Commodities Act, 1930, as amended, except orders issued under sections 210(e), 217a, and 499g(a) of Title 7, and (c) such final orders of the United States Maritime Commission or the Federal Maritime Board or the Maritime Administration entered under authority of the Shipping Act, 1916, as amended, and the Intercoastal Shipping Act, 1933, as amended, as are now subject to judicial review pursuant to the provisions of section 830 of Title 46, and (d) of the Atomic Energy Commission made reviewable by section 2239 of Title 42.

"Such jurisdiction shall be invoked by the filing of a petition as provided in section 1034 of this title." 5 U.S.C.A. § 1032.

2. 7 U.S.C.A. §§ 210(e) and 217a.

3. Ibid § 201(d).

3a. Ibid § 203.

the livestock industry as buyers and packer-buyers, rather than as dealers. Packer-petitioners regularly buy livestock for their own accounts for slaughter, through employees regularly employed on salary or other comparable method of compensation, including the packer-buyer petitioners, at posted stockyards, including the Union Stock Yards, Chicago. There are more than 1,800 packer-buyers buying livestock for packers at posted stockyards. Packer-buyers act in the name of, for the account of, and as the employees of packers, and not in their own names nor on their own accounts, and these facts are generally known to and accepted by persons operating at posted stockyards. The greater percentage of slaughter livestock is purchased by packers through their packer-buyers. The only packers who are registered as dealers are several small packers who personally buy livestock at posted stockyards.

The stipulation also indicates that responsible officials of the department of agriculture would testify to the following administrative practice and construction: The department has regarded packer-buyer employees as being subject to registration as dealers. However, when employers were registered and bonded the department generally considered such registration and bonding to be sufficient to permit effective enforcement of the regulatory program and accordingly when the employees of such registrants acted within the scope of their employment, it was not the general practice of the department to request such employees to register and give bond, and enforcement proceedings were not instituted to require them to register and give bond. Prior to 1933, it was the regular and continuous practice of the department to require packers and their employee buyers to register as dealers and to require packers to file bonds pursuant to the act. In 1926, proceedings before the secretary of agriculture terminated in orders directing a packer,

Roberts & Oake, and a packer-buyer, Howard Turner, to furnish bonds. Howard Turner, the packer-buyer was registered under the act as a dealer. The United States instituted a suit to compel the packer to furnish a bond. On appeal, the United States Circuit Court of Appeals for the Seventh Circuit filed its opinion, United States v. Roberts & Oake, 65 F.2d 630, on June 5, 1933. No petition for a writ of certiorari was filed in the Supreme Court. After January 9, 1934, it was not the general practice of the department to request packers and packer-buyers to register. The chief of bureau of animal industry of the department of agriculture on January 9, 1934 wrote to Armour and Company, a packer, saying, in part, "you are informed that the Bureau is no longer requiring packer buyers to register at posted markets." After the decision in United States v. Roberts & Oake, supra, a number of new registrations by packers and packer-buyers, as dealers, were filed. About 15 years after the decision in United States v. Roberts & Oake, supra, the department, because of administrative considerations, discontinued registering packers and packer-buyers, as dealers, and removed all such existing registrations from the active file. As of the date of the stipulation, which was filed February 28, 1955, about 1,824 packer-buyers who purchased livestock for slaughter were registered as dealers. The case of United States v. Roberts & Oake, supra, is the only reported court case instituted by the government to compel a packer to furnish a bond under the act. There is no reported court case instituted by the government to compel a packer or a packer-buyer to register, under the act, as a dealer.

The petition alleges that prior to 1933 the secretary of agriculture construed the packers and stockyards act to require both packers and their buyers to register and file bonds,[4] but since 1933 and until the promulgation of the regulation challenged in the instant case, he

---

4. Registration provisions specifying the method of registration were first issued shortly after the passage of the act in 1921.

has acquiesced in the construction of the packers and stockyards act as not requiring registration of packer-buyers.

The petition charges that "the packer-buyer petitioners are parties aggrieved by Regulation 201.10(c), since it directly applies to them, and subjects them both to the registration and other requirements of Title III of the Packers and Stockyards Act. If they fail to register as required by the challenged regulation, they will be subjected to the risk of cumulative penalties. If they do register or attempt to register, they will subject their means of livelihood to the control of the secretary of agriculture, with the result that they cannot continue in the occupation upon which they depend for their living if he should deny or suspend registration".[5]

Petitioners pray that this court enjoin the enforcement of, set aside and suspend section 201.10(c) of the packers and stockyards regulations issued by the secretary of agriculture on July 19, 1954 (Fed.Reg. 146 July 22, 1954, p. 4525), and declare that the aforesaid section 201.10(c) is contrary to law and invalid.

An appendix to the petition sets forth (as "pertinent portions of the regulations") "Part 201", showing that the regulations in question were promulgated by the secretary of agriculture under date of July 19, 1954 [6] following various public hearings on the subject of revising the existing regulations. The only regulation quoted in the appendix is section 201.10(c).

1. At the threshold we must consider the challenge of the secretary of agriculture to our jurisdiction to proceed because, he contends, only final *orders* under the packers and stockyards act, 1921, as amended, are reviewable under the Hobbs act.[7] He contends that the notification challenged in this court proceeding is not an order within the meaning of said act. He contends that the

packers and stockyards act requires all dealers to register with the secretary "under such rules and regulations as the Secretary may prescribe * * *"[8], and that, the statute having defined the term "dealer"[9], "The notification by the Secretary, set forth in the revised regulations issued under the Act, merely iterates the statutory requirement that any 'dealer' within the ambit of the statutory definition, including a buyer for a packer, shall register in accordance with the requirements of the Act and the regulations." The gist of his argument is:

"The notification imposes no obligation or requirement on the buyers not imposed by the statute. The notification is not the force which requires the buyers to register. The statute requires all dealers to register' under the rules prescribed by the Secretary, * * *. The requirement of registration applies even though no notice is given by the Secretary. In this instance, the notice was given to the industry because of the prior administrative practice, and the notice merely informed the industry that the provisions of the statute, which the Secretary has no authority to waive, would be enforced."

Conceding that most of the regulations published with the challenged notice implement obligations imposed on persons subject to the act, he points out that no challenge is made, in this proceeding, with respect to the method of registration set forth in section 201.10(a) (b), and that petitioners' attack is aimed only at the requirement of registration. He then reasons that inasmuch as the statute "imposes the obligation on dealers to register 'under such rules and regulations as the Secretary may prescribe', * * * the notification that the buyers for packers

5. It is alleged that the packer petitioners are aggrieved parties.

6. F.R.Doc. 54–5645; Filed, July 21, 1954; 8:35 a. m.

7. 5 U.S.C.A. § 1032.

8. 7 U.S.C.A. § 203.

9. Ibid § 201(d).

shall register in accordance with the requirements set forth in the Act and in the regulations imposes no *new* [10] obligation on the buyers."

The secretary says, and he is correct in the statement, that the petition to review is limited to the challenge of a single provision in the revised regulations, i. e., section 201.10(c), which notifies the industry that the act will be enforced as to the buyers for packers. He insists that that notice is not even an interpretative regulation, because there is nothing that requires interpretation or construction. Contending that the statute defines the term dealer, and makes dealers subject to the registration requirements of the act and the regulations, he says that his notice merely states that a buyer for a packer, who is squarely within the statutory definement of "dealer", is subject to the registration requirements of the act and the regulations. He adds that "where the words are plain there is no room for construction."

In testing the correctness of the secretary's contention, especially that section 201.10 imposes no new obligations on the packer-buyers, we must consider the factual situation which had existed for about 20 years, by virtue of the established policy of the secretary, rather than the situation which would have existed if he had enforced the act as written during that period of time. The administrative construction thus placed upon the act by the agency charged with its administration may or may not have been justified by our decision in United States v. Roberts & Oake, supra, but nevertheless it was the construction deliberately adopted and openly relied upon by the secretary, and correlatively relied upon by the public, including the packer-buyers. During that period there was actually no obligation to register enforced against packer-buyers. In resolving this challenge to our jurisdiction we are not called upon to decide whether the secretary had a right to change his policy and impose obligations under the act upon the packer-buyers. That question may be resolved only if we find that his promulgation of section 201.10(c) is an order reviewable under the Hobbs act.

We hold that his notification of the promulgation of regulation section 201.10 reversed the administrative policy construing the act, which policy had been in effect for 20 years, and therefore imposed obligations upon packer-buyer petitioners as well as packer petitioners. Those obligations, when measured by the jurisdictional test which we are now applying, are of the same type as those involved in Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 425, 62 S.Ct. 1194, 86 L.Ed. 1563, and Federal Communications Comm., v. American Broadcasting Co., Inc., 347 U. S. 284, 290, 74 S.Ct. 593, 98 L.Ed. 699. The court said in Columbia Broadcasting System, Inc. v. United States, supra, 316 U.S. at page 425, 62 S.Ct. at page 1204:

"The ultimate test of reviewability is not to be found in an over-refined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control."

We therefore hold that the notification of the promulgation of regulation section 201.10 is an order subject to our review under the Hobbs act.

2. We are now asked by petitioners to uphold their contention, which is that the packer-buyer is not required to register under the packers and stockyards act because he is not a "dealer" within the definition of the act and its long-standing judicial and administrative construction.

10. Italics supplied by us for emphasis.

Petitioners claim that section 201 (d) [11] of the act is ambiguous, while respondents contend that it is unambiguous.

In support of the charge of ambiguity, petitioners point out that this section is found in Title III of the act, which they say makes no reference to the activities of a packer or any of his employees and that, if congress had intended registration requirements to apply to a packer or his employees, as well as to stockyard owners, market agencies and dealers, that provision would logically have found its place in Title IV, known as "General Provisions". They also argue that, if the section be construed to include packer-buyers, it would illogically require the maintenance of daily records of livestock purchases and sales by about 1,800 packer-buyers, which indeed might lead to a conclusion that the secretary has power to require the keeping of records by an additional 3,400 persons, who are employees of persons other than packers and who are engaged in the purchase or sale of livestock at posted stockyards. They contend that these requirements would be useless and, at least to the extent of the packer-buyers would require the making of records which would be duplications of the records kept by their employers, the packers.

On the other hand, respondents, in support of their contention that the legislative definition of dealer contained in the act means exactly what it says, i. e., that any person buying livestock on a posted stockyard as an employee or agent of the purchaser is a dealer, cite the legislative history of the act. They point out that it has been said: [12]

"But words are inexact tools at best and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on "superficial examination." ' "

When the bill for the act [13] was before the senate, Senator Kenyon proposed an amendment to the definition of "dealer" by inserting after the word "purchaser" and before the period, the following: "And includes any packer in his capacity as a buyer or seller of livestock in commerce and any employee or agent of any packer in such capacity." [14] He explained in the debate in the senate that the "purpose of this amendment is simply to make it specific that the buyers of the packers, who may operate under assumed names or as dummies in the stockyards, shall be included. There cannot be any question about that." The amendment was adopted but was rejected later in conference and the house conference report on the bill explains the reason for the rejection in these words: "Amendment No. 7: The House Bill defined 'dealer' to mean any person 'engaged in the business of buying or selling, in interstate or foreign commerce, livestock at a stockyard, either on his own account or as the employee or agent of the vendor or purchaser.' The Senate amendment adds at the end of this definition words which merely repeat what was in the House bill; and the Senate recedes." [15]

We hold that section 201(d) of the act requires the packer-buyer petitioners to register under the act as dealers. If the consequences of the act are illogical, unreasonable or undesirable, in the opinion of congress, it, and only it, can make a change. This court cannot by judicial interpretation alter a statute.

11. 7 U.S.C.A. § 201(d) "The term 'dealer' means any person, not a market agency, engaged in the business of buying or selling in commerce livestock at a stockyard, either on his own account or as the employee or agent of the vendor or purchaser."

12. Harrison v. Northern Trust Co., 317 U. S. 476, at page 479, 63 S.Ct. 361, at page 363, 87 L.Ed. 407.

13. H.R. 6320, 67th Cong., 1st Sess.

14. 61 Cong.Rec. 2665.

15. H.Rep.No.324, 67th Cong., 1st Sess., p. 3, 61 Cong.Rec. 4778–4779.

The case of United States v. Roberts & Oake, 65 F.2d 630, upon which petitioners rely, is not controlling in this case. As was said in Kelley v. United States, 10 Cir., 202 F.2d 838, at page 841: "All that case is authority for is that a packer is not a dealer under the Act and is, therefore, not required to give a bond."

We hold that section 201.10(c) of the regulations is valid as against the attack of petitioners. We conclude that the prayer of the petition that the enforcement of the regulation be enjoined and that the regulation be set aside and suspended, should be and it is hereby denied.