RENDELL, Circuit Judge,
dissenting:
I respectfully dissent because I find the phrase “engaged in the business of buying or selling ...” to be susceptible of a different meaning from that given it by the majority.
Restaurants are engaged in the business of'preparing and selling meals to customers. Not only is buying or selling perishables in large quantities not their primary business, it is not their business at all.[10] Admittedly, in the course of their business, they do buy perishables in great quantities. If PACA was intended to include them, Congress should have said, “any business that buys or sells ... ”; it did not. As I read the statute, it confines the concept of “dealer” to those who do this as their bread and butter, so to speak. The majority reading would make most prisons *118 “dealers,” yet prisons are not engaged in the perishable commodity-buying business.
The reading I have proffered, together with the majority’s rejection of it, leads me to conclude that the statutory language is ambiguous. Once we have found an ambiguity in the statutory language, our resort to legislative history would confirm that PACA is not intended to cover restaurants and food service institutions. In discussing the definition of “retailer” (which relies in part on the definition of dealer), the House Report made clear that food service establishments such as restaurants or schools, hospitals, and other institutional cafeterias are not required to be licensed. The agency’s construction of PACA is consistent with this position.[11] In short, dealers and brokers are those whose business is in dealing in, or brokering, these items. They should be licensed and are subject to the Act. Magic is engaged in a very different business, and is not in my view subject to regulation as a “dealer” under PACA.

. The majority relies by analogy upon the Kelley case, which found that the Packers and Stockyards Act did not require a dealer to be engaged solely in the business of selling livestock. See Kelley v. United States, 202 F.2d 838 (10th Cir.1953). This analogy is inappo-site. In Kelley, the livestock dealer was clearly engaged in the business of selling livestock. Kelley was a proprietor of a stockyard that, because it was private, was not itself subject to the Packers and Stockyards Act. See id. at 839. The Tenth Circuit Court of Appeals found that, by buying livestock from stockyards that were subject to the Act, Kelley became a "dealer” subject to the registration and bond requirements of the Act. See id. at 841. That is, the issue in Kelley was whether the livestock dealer had to be registered when his dealing in livestock subject to the Act was not his sole business due to the fact that his sales of other livestock might predominate. There is no question that the core of Kelley’s business was dealing livestock, and this clearly distinguishes his case from the instant case where Magic’s business is not dealing in produce.

. The majority notes that we “should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms.” Ante at 115 (quoting Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)). Here, however, the only unambiguous statement of Congressional intent appears in the House Report. The agency’s position is consistent with the intent expressed in the legislative history. See In re The Italian Oven, Inc., 207 B.R. 839, 843-44 (Bankr.W.D.Pa.1997) (describing agency position on, and legislative history of, the "dealer” provision of PACA).