UNITED STATES of America, Plaintiff–Appellee,

v.

Carlos Martinez MEDINA, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Rodimiro ROJAS–OQUITA, aka Rody, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

George Stephen AGUILAR–CORREA, aka El Grande, Defendant–Appellant.

Nos. 89–10651, 89–10653 and 90–10002.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1991.

Decided July 31, 1991.

---

Edward H. Laber, Stephen G. Ralls and Sean Bruner, Ralls & Bruner, Michael J. Brady, Tucson, Ariz., for defendants-appellants.

David A. Kern, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before BRUNETTI and RYMER, Circuit Judges, and WILSON,* District Judge.

* The Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

RYMER, Circuit Judge:

These are three of the appeals arising out of a three-and-a-half-week drug conspiracy trial in Tucson, Arizona in August of 1989. Rodimiro Rojas–Oquita was indicted on 17 counts and convicted on 14.[1] We vacate his two conspiracy convictions because they are lesser-included offenses of his conviction for engaging in a continuing criminal enterprise and we affirm his remaining counts of conviction. Martinez Medina was convicted on four counts and acquitted on another.[2] We affirm his convictions. Aguilar–Correa was convicted of conspiring to distribute cocaine, in violation of 21 U.S.C. § 846.[3] We reverse that conviction because there was insufficient evidence to support it.

## I. Sufficiency of the Indictment's Aiding and Abetting Counts

█ Count 5 charged Rojas–Oquita and Martinez Medina with aiding and abetting the importation of cocaine and count 8 charged them with aiding and abetting the distribution of cocaine. The jury found both defendants guilty on count 5. On count 8, the jury convicted Rojas–Oquita but acquitted Martinez Medina. They challenge the sufficiency of these two counts of the indictment.

The defendants rely on *Londono–Gomez v. INS*, 699 F.2d 475 (9th Cir.1983), which states that "[b]ecause the aiding and abetting statute does not define a separate offense, 'an indictment under [18 U.S.C. § 2] must be accompanied by an indictment for a substantive offense.'" *Id.* at 477 (quoting *United States v. Cowart*, 595 F.2d 1023, 1031 n. 10 (5th Cir.1979)). They read this statement to mean that an indictment for aiding and abetting must also indict a principal.

Such a reading conflicts with the law of our circuit. *See United States v. Mehrmanesh*, 689 F.2d 822, 835 (9th Cir.1982) ("[defendant's] contention that the indictment was fatally defective because it did not name the principal whom he was charged with aiding and abetting ... is without merit.... [I]dentification of the principal is not an essential element of a conviction for aiding and abetting").

*Londono–Gomez* merely stands for the proposition that in order sufficiently to charge aiding and abetting under 18 U.S.C. § 2, the count must allege a violation of some substantive statute *along with* 18 U.S.C. § 2. "There can be no violation of section 2 alone...." *Cowart*, 595 F.2d at 1031 n. 10 (citing *United States v. Campbell*, 426 F.2d 547, 553 (2d Cir.1970)). An indictment for aiding and abetting may stand alone, so long as it recites the accompanying substantive statute along with § 2 in the same count. That requirement was met in this case: count 5 alleged aiding and abetting the importation of cocaine in violation of 18 U.S.C. § 2 *and* 21 U.S.C. §§ 952(a), 960(a)(1) & 960(b)(2)(B)(ii); count

---

1. Rojas–Oquita was convicted of: engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (count 1), conspiracy to import cocaine, in violation of 21 U.S.C. § 963 (count 2), aiding and abetting the importation of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a) & 960(a)(1) (count 5), conspiring to distribute cocaine, in violation of 21 U.S.C. § 846 (count 6), aiding and abetting the distribution of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (count 8) and nine counts of using a telephone to facilitate the distribution of cocaine, in violation of 21 U.S.C. § 843(b) (counts 4 and 12–19).

 He was acquitted of another count of aiding and abetting the distribution of cocaine (count 7). The district court directed a verdict for him on another facilitation by telephone count (count 3) and on a charge of conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c) (count 9).

2. His convictions were for conspiring to import cocaine, in violation of 21 U.S.C. § 963 (count 2), aiding and abetting the importation of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a) & 960(a)(1) (count 5), conspiring to distribute cocaine, in violation of 21 U.S.C. § 846 (count 6) and using a telephone to facilitate the distribution of cocaine, in violation of 21 U.S.C. § 843(b) (count 10).

 He was acquitted of a count of aiding and abetting the distribution of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (count 8).

3. The conspiracy to distribute was count 6. The district court directed a verdict in Aguilar–Correa's favor on count 9, for conspiring to kidnap in violation of 18 U.S.C. § 1201(c).

8 alleged aiding and abetting the distribution of cocaine in violation of 18 U.S.C. § 2 *and* 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(ii)-(II). Therefore, counts 5 and 8 of the indictment were sufficient.

## II. Sufficiency of the Evidence to Convict Aguilar–Correa

Aguilar–Correa's role in the events leading to this trial occurred in a subplot. He allegedly conspired to kidnap Anthony Vela, one of Rojas–Oquita's dealers, to pressure Vela to pay a cocaine debt of $34,000 owed to Rojas–Oquita. Hector Cotaque–Acosta, not an appellant here, and Aguilar–Correa allegedly kidnapped Vela at Rojas–Oquita's behest to facilitate collection of the drug debt. Aguilar–Correa contends that there was insufficient evidence to convict him of conspiring to distribute cocaine.

 In considering a challenge to the sufficiency of the evidence, we decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis in original). The essential elements of a conspiracy are: "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *United States v. Meyers,* 847 F.2d 1408, 1412–13 (9th Cir.1988). The government's case against Aguilar–Correa falters on the third element. *See generally United States v. Krasovich,* 819 F.2d 253, 255 (9th Cir.1987) ("Knowledge of the objective of the conspiracy is an essential element of a conspiracy conviction"); *United States v. Vaughn,* 797 F.2d 1485, 1492 (9th Cir.1986) ("the evidence must show that [defendant] 'had an intention and agreement to accomplish a *specific* illegal objective'" (emphasis added)) (quoting *United States v. Melchor–Lopez,* 627 F.2d 886, 891 (9th Cir.1980)). The relevant substantive offense in this case is distribution of cocaine. There appears to be ample evidence showing that Aguilar–Correa is *connected* to such a conspiracy by acting, perhaps unwittingly, in furtherance of it, but the government produced no evidence to support an inference that he knew the objective of the conspiracy was the distribution of cocaine.

Taking the evidence in the light most favorable to the government, there is sufficient indication that Aguilar–Correa was involved in some attempt to collect money for Rojas–Oquita. Conspicuously absent from the record, however, is any indication that Aguilar–Correa was aware that drug distribution was the object that this episode was furthering or intended to further. The government points to the transcripts of four telephone conversations. These transcripts show that Aguilar–Correa plotted with Rojas–Oquita to collect a debt and apprised Rojas–Oquita of the progress of his actions on Rojas–Oquita's behalf, but nothing in them supports an inference that the Vela episode had anything to do with the distribution of cocaine. The jury could properly infer that Aguilar–Correa had the intent to commit some sort of illegal objective, but there does not appear to be any evidence that he had the intent to further the illegal objective charged in *this* indictment. The Supreme Court has warned, " 'Without the knowledge, the intent cannot exist.... Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal.... This, because charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning ... a dragnet to draw in all substantive crimes.' " *Ingram v. United States,* 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503, 1509 (1959) (quoting *Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943)). Aguilar–Correa, though perhaps guilty of *some* sort of conspiracy, was caught in an impermissible dragnet here because there is insufficient evidence that he had knowledge of the ultimate object of *this* conspiracy: to distribute cocaine. His conviction cannot stand.[4]

---

**4.** Because we reverse Aguilar–Correa's conviction, we need not address his remaining claims

## III. Rojas–Oquita's Continuing Criminal Enterprise Conviction

Rojas–Oquita challenges the sufficiency of the evidence to convict him of engaging in a continuing criminal enterprise (CCE) and objects to the district court's jury instruction on this count. He argues that there is insufficient evidence to establish one of the elements of a CCE: that he engaged in an enterprise "from which [he] obtain[ed] substantial income or resources." 21 U.S.C. § 848(c)(2)(B). He contends that the statute applies only to drug "kingpins" and that evidence showing his involvement in at most $33,000 of drug transactions cannot qualify him as a "kingpin." We disagree with Rojas–Oquita's characterization of the scope of the statute. The statute means what it says and there is no requirement that the government prove that a defendant is a kingpin.

The Supreme Court has stated that the language of the CCE statute "is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Garrett v. United States*, 471 U.S. 773, 781, 105 S.Ct. 2407, 2413, 85 L.Ed.2d 764, 773 (1985). The spectrum of drug dealers ranges from kingpins on the one end to small-time and occasional dealers on the other. In applying the CCE statute, other courts have wisely refrained from establishing a precise definition of what constitutes "substantial" income or resources. *See United States v. Losada*, 674 F.2d 167, 173 (2d Cir.) ("neither the statute nor the cases establish a *minimum* amount" required to make statute applicable; Congress would have provided for minimum if it had intended one), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982); *United States v. Jeffers*, 532 F.2d 1101, 1117 (7th Cir.1976) (no "definite amount of profits" need be proven to obtain CCE conviction), *aff'd in part and vacated in part on other grounds*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).

The practical meaning of "substantial income or resources" will normally be a question for the trier of fact and its scope will develop case by case. We recognize that the statute's language should be understood to include extremely large-scale dealers, *e.g.*, *United States v. Zavala*, 839 F.2d 523, 527 (9th Cir.) (per curiam) (defendant involved in drug conspiracy over several years involving distribution of cocaine valued at $1.8 million), *cert. denied*, 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988); *United States v. Dickey*, 736 F.2d 571, 588 (10th Cir.1984) (defendant made $30,000 per month from CCE), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985), and those dealing drugs in the range of "thousands" of dollars, *e.g.*, *United States v. Smith*, 918 F.2d 1501, 1513–14 (11th Cir.1990) ("tens of thousands" of dollars passed through the operation); *United States v. Casamento*, 887 F.2d 1141, 1159 (2d Cir.1989) (same), *cert. denied*, —— U.S. ——, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1989), —— U.S. ——, ——, 110 S.Ct. 2175, 2564, 109 L.Ed.2d 504, 746 (1990); *United States v. Gonzales*, 866 F.2d 781, 784 (5th Cir.) ("many thousands of dollars changed hands"), *cert. denied*, 490 U.S. 1093, 109 S.Ct. 2438, 104 L.Ed.2d 994 (1989); *United States v. Gantt*, 617 F.2d 831, 847 (D.C.Cir. 1980) (same); *United States v. Bolts*, 558 F.2d 316, 321 (5th Cir.1977) (same), *cert. denied*, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977), 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978). But a district court ought not allow a jury to apply the statute to the occasional or small-time dealer, *see Losada*, 674 F.2d at 173 (substantial income language "clearly was intended to exclude trivial amounts derived from occasional drug sales"); *Jeffers*, 532 F.2d at 1117 ("congress did not seek to punish small-time operators under this section"), or to minor players in larger operations, *see United States v. Ayala*, 769 F.2d 98, 102–03 (2d Cir.1985) (evidence insufficient to convict "errand boy" in large drug operation when there was no direct evidence of large income or wealth and role in enter-

that the district court should have severed his trial, that a gun was improperly admitted into evidence against him, that the alleged kidnap-

ping of a coconspirator cannot be an act in furtherance of the conspiracy and that the district court erred in sentencing him.

prise did not support inference of such income or wealth); *but see Losada*, 674 F.2d at 173 (dicta) (suggesting $2,000 yield from drug sales over four year period "is not so insignificant as to render the statute inapplicable").

■ The evidence in this case, viewed in the light most favorable to the government, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), was sufficient to allow the jury to conclude that Rojas–Oquita derived "substantial income or resources" from his enterprise. There was evidence that he received over $50,000 from drug deals in a three-month period, as well as circumstantial evidence, such as the volume of telephone calls at his residence, to infer that drug dealing was a full-time occupation. Evidence of anticipated income of $55,000 is circumstantial evidence that he had already received similar quantities in the past during the course of his extensive drug dealing.

■ Rojas–Oquita argues that it is improper to consider circumstantial evidence of his wealth, specifically the anticipated income, and that the district court erred in instructing the jury that it could use such evidence. The court instructed:

> Income and resources means receipts of money or property. Income and resources may also be proved by circumstantial evidence such as trafficking in large quantities of cocaine, accounts receivable in the assignment of cocaine, and expectation of later payment representing substantial anticipative profits and substantial cash expenditures without any reportable income.

This instruction was proper. The substantial income or resources element may be proved by circumstantial evidence. *See Zavala*, 839 F.2d at 527 (high selling price and amount of cocaine involved supported inference "that the appellant earned substantial income from the enterprise"); *see also United States v. Roman*, 870 F.2d 65, 75 (2d Cir.), *cert. denied*, 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989); *United States v. Draine*, 811 F.2d 1419, 1421 (11th Cir.) (per curiam) (may prove substan-

tial income by direct or circumstantial evidence), *cert. denied*, 484 U.S. 827, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987); *Ayala*, 769 F.2d at 101–02; *Losada*, 674 F.2d at 173 (involvement with cocaine sales plus lifestyle grossly in excess of legitimate income is circumstantial evidence of substantial income derived from drugs); *United States v. Chagra*, 669 F.2d 241, 257 (5th Cir.) (government may prove substantial income or resources "by relying upon a variety of types of direct or circumstantial evidence"), *cert. denied*, 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982). Evidence of profits not yet collected is relevant circumstantial evidence of whether the defendant has already *actually* obtained substantial income or resources.

Rojas–Oquita relies on *United States v. Bueno–Risquet*, 799 F.2d 804 (2d Cir.1986), to support his claim of error. In that case, the Second Circuit reversed a conviction based on a jury instruction that income "includes anticipated profits *as well as* those actually realized." *Id.* at 812 (emphasis added). The instruction the district court gave in this case is quite different. Rather than inviting the jury to aggregate anticipated and realized profits, this instruction properly informed the jury that income or resources meant "receipts of money or property." The court then informed the jury, properly again, that anticipated profits could be considered as circumstantial evidence in determining what income or resources were actually received. *See Zavala*, 839 F.2d at 527 (upholding inference of substantial income received).

## IV. Rojas–Oquita's Double Jeopardy Claim

Rojas–Oquita contends that, given his CCE conviction, his convictions for the conspiracies charged in counts 2 and 6 violate the double jeopardy clause. Count 2 charged a conspiracy to import cocaine, in violation of 21 U.S.C. § 963, and count 6 charged conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846.

■ Rojas–Oquita is correct and we vacate his convictions on those two counts. In *United States v. Hernandez–Escarsega*,

886 F.2d 1560 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990), we held that Congress did not intend cumulative punishment of § 846 conspiracies and the greater offense of a § 848 CCE violation, and "the only remedy ... is for the sentencing court to vacate the convictions for the lesser offenses." *Id.* at 1582. The same reasoning applies to cumulative punishments under § 848 and the lesser offenses of § 963 conspiracies. A defendant may not be convicted for both a CCE and a conspiracy predicate to the CCE conviction. *Cf. United States v. Burt,* 765 F.2d 1364, 1368–69 (9th Cir.1985) (defendant may be convicted of CCE simultaneously with *substantive* predicate offense) (following *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)).

■ We recognize that district courts faced with convictions on both CCE and lesser-included conspiracy counts are put in a bind. If the district court itself vacates the conspiracy convictions, citing *Hernandez–Escarsega,* and the court of appeals subsequently reverses the CCE conviction, the courts would be powerless to reinstate the potentially valid lesser-included counts of conviction. In such circumstances, the more efficient course for a district court to follow is to impose a sentence on the CCE count and an alternative sentence on the lesser-included convictions. For example, the court may sentence a defendant based on the CCE count and vacate the lesser-included convictions subject to the condition that the CCE conviction is not reversed on appeal. At the same time, the court should sentence in the alternative based upon the lesser-included count or counts; the alternative sentence would be conditioned upon an appellate reversal of the CCE count. If a district court employs this method, the parties, as well as the appellate court, are apprised of the situation facing them. If, for reasons of double jeopardy, vacation of the lesser-included offenses becomes warranted, there will be no need for a remand because the vacation will have been accomplished automatically. If an appellate court, on the other hand, reverses the CCE count, the conviction and sentence on the lesser-included counts will be effective and subject to the same appeal. Thus, needless remand will be avoided.

## V. Conclusion

Rojas–Oquita claims that there were other errors at his trial. None of his arguments has merit, as we hold in an accompanying unpublished memorandum disposition. We vacate his sentence for the reasons stated in our memorandum disposition. Rojas–Oquita's convictions on counts 2 and 6 are VACATED. His other convictions are AFFIRMED. His sentence is VACATED and the case is REMANDED for resentencing.

Martinez Medina also claims that there were other errors at his trial. None of his arguments has merit, as we hold in an accompanying unpublished memorandum disposition. Martinez Medina's convictions are AFFIRMED.

Aguilar–Correa's conviction is REVERSED.