**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Emiliano CRUZ–VENTURA,
Defendant–Appellant.**

No. 91–50720.

United States Court of Appeals,
Ninth Circuit.

Submitted June 1, 1992 *.

Decided Sept. 22, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Steven F. Hubachek, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Steve Miller, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before: POOLE, BRUNETTI and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Emiliano Cruz–Ventura (Cruz) appeals the sentence imposed by the district court after he pleaded guilty to one count of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). The district court added two points to Cruz's offense level on account of a previous conviction related to alien smuggling. It then imposed a sentence that departed upward from the guidelines range by 12 months. We vacate and remand for resentencing.

## BACKGROUND

On May 15, 1991, Cruz and an associate, Juan Bautista Zurita–Solano (Zurita), attempted to smuggle four illegal aliens past the immigration checkpoint near San Clemente, California. Cruz had agreed to transport the aliens to Los Angeles for a smuggler identified only as "El Tortuga." He was to be paid $100 for his efforts.

As his 1981 Buick Le Sabre approached the checkpoint, Cruz, who was driving, and Zurita held up their immigration cards. The Border Patrol agent recognized this as a common ploy among alien smugglers and noticed that Zurita's hand was shaking. The agent ordered Cruz to proceed to the secondary inspection station. At first Cruz appeared to cooperate, but then he accelerated out of the checkpoint.

The Border Patrol agents gave chase. Cruz proceeded north on Interstate 5 at a speed of 100 miles per hour. He used all travel lanes as well as the median strip and the shoulder to negotiate the Buick through traffic and evade the pursuing agents. He repeatedly entered and exited the freeway, disregarding traffic lights in his path. Finally, after twelve miles he exited I–5 onto the Pacific Coast Highway. He ran a light and collided with a 1989 Acura Integra. The Integra's occupants sustained no injuries, and the damage to their car was minor. Cruz left the Buick in gear and fled the scene of the accident on foot. After a 100 yard chase, he was apprehended by a Border Patrol agent. Zurita remained in the Buick.

A fully loaded Titan .22 caliber semi-automatic pistol was found in the pocket of a jacket on the driver's seat of the car; Cruz and Zurita both denied ownership. The four aliens were found locked in the car's trunk.

Cruz pleaded guilty to one count of transporting undocumented aliens in violation of 8 U.S.C. § 1324(a)(1)(B). His presentence report indicated a total offense level of 11 and a criminal history category of IV (four). His offense level was increased from a base level of 9 to a total of 11 to account for his prior conviction for a related offense. Cruz's Guideline sentencing range was 18 to 24 months. The district court, however, departed upward and sentenced him to 36 months. The court

based its upward departure on a number of factors that it felt were inadequately considered by the Guidelines.

### JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

■ We review the district court's decision to depart from the Guidelines under a tripartite test established in *United States v. Lira–Barraza*, 941 F.2d 745, 746–47 (9th Cir.1991) (en banc). First, the district court's determination that an "unusual circumstance" not adequately considered by the Guidelines permits departure is subject to de novo review. *Id.* at 746. Second, the district court's factual findings supporting the existence of an identified circumstance permitting departure are reviewed for clear error. *Id.* at 746–47. Finally, the extent of the departure is reviewed to determine whether it is "reasonable" in light of the standards and policies incorporated in the Sentencing Reform Act and the Guidelines. *Id.* at 751.

### DISCUSSION

#### A. *Prior Related Offense*

The presentence report recommended that Cruz's offense level be enhanced by two points because he had previously been convicted of aiding and abetting illegal entry. 8 U.S.C. § 1325. Section 2L1.1(b)(2) requires the court to enhance the base offense level by two points "[i]f the defendant previously has been convicted of smuggling, transporting, or harboring an unlawful alien, or a related offense...."

■ We have yet to decide whether a conviction for aiding and abetting illegal entry may be considered a prior related offense within the purview of section 2L1.1(b)(2). The Fifth Circuit has squarely determined that a "prior conviction of aiding and abetting the entry of an illegal alien is within the scope of the 'related offenses' contemplated by [section 2L1.1(b)(2).]" *United States v. Reyes–Ruiz*, 868 F.2d 698, 703 (5th Cir.1989), *overruled on other grounds, United States v. Bachynsky*, 934 F.2d 1349 (5th Cir.) (en banc), *cert. denied*, — U.S. —, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991). That court declared that "[i]t is difficult to imagine a situation in which aiding the entry of an illegal alien does not involve some aspect of smuggling, transporting, or harboring that person." *Id.* at 702 (footnote omitted).

However, Cruz argues that the commentary to the applicable guideline and a recent Supreme Court decision compel a different result here. First, he contends, application note 2 to section 2L1.1 limits "related offense" to inchoate offenses such as conspiracy, attempt, and aiding and abetting the substantive offenses of smuggling, transporting, or harboring illegal aliens. The separate substantive offense of aiding and abetting illegal entry is not within the application note's definition of a "related offense." Cruz fails to notice that note 2 is inclusive but does not purport to be exclusive. He also fails to address the background comment to section 2L1.1 which states that "enhancement [is proper] if the defendant was previously convicted of a similar offense." We conclude that aiding and abetting illegal entry is a "similar offense." Indeed, as we explain below, it could hardly be otherwise.

Next, Cruz argues that the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), which mandates a "categorical analysis" of offenses for purposes of some statutory sentencing enhancements, puts his aiding and abetting conviction outside the scope of a "related offense." In *Taylor*, the Court held that the sentencing court must generally look to the statutory definition of an offense only, rather than to the actual facts supporting the defendant's prior conviction when it applies 18 U.S.C. § 924(e) (armed career criminal). *Id.* at 602, 110 S.Ct. at 2160. We have applied the same rule to the career offender enhancement under the Guidelines, which is based upon convictions for prior offenses. *See United States v. Becker*, 919 F.2d 568, 570 (9th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1118,

113 L.Ed.2d 226 (1991).[1] Section 2L1.1(b)(2) refers to convictions of other offenses, as does the guideline section which was at issue in *Becker. See* U.S.S.G. § 4B1.1. That militates for a categorical approach, as does *Becker*'s reasoning. *Id.* We adopt that approach for section 2L1.1 purposes.

In this case, it appears that Cruz's prior conviction resulted from his arrest as a passenger in a vehicle containing illegal aliens, conduct eminently similar to his present transportation conviction. That, however, is beside the point. The statutory definition of aiding and abetting illegal entry encompasses a broader range of activity. Cruz argues that a defendant may be convicted of aiding and abetting illegal entry by merely directing an illegal alien to the border. He cites *United States v. Aguilar,* 883 F.2d 662 (9th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 751, 112 L.Ed.2d 771 (1991), for this broad reading. *Aguilar,* however, found that evidence that the defendant supplied an illegal alien with false immigration documents, coached the alien to lie to immigration authorities, and accompanied the alien through the checkpoint was sufficient to sustain a conviction under section 1324. *See Aguilar,* 883 F.2d at 681–84. Moreover, an aider and abetter is a person who knowingly and intentionally helps another to commit a crime. *See, e.g.,* Manual of Model Jury Instructions for the Ninth Circuit § 5.01 (1992). Nonetheless, Cruz contends, if one ignores the actual facts underlying the prior conviction, the generic, statutory offense itself does not qualify as a related offense. We disagree. Even if relatively minor activities, like accompanying someone to the border for the purpose of helping him enter the United States illegally, are not the same as smuggling, they are certainly related to that offense. Even categorically speaking, both acts have the same purpose—enabling the unlawful entry of an alien into this country. Thus, while Cruz's prior offense may not have been a brother to the present one, it was at least a first cousin.

On balance, therefore, we are persuaded by the Fifth Circuit's reasoning in *Reyes–Ruiz.* Helping aliens enter this country illegally fits hand in glove with actually bringing them in or hiding them once they are here. Cruz has demonstrated a pattern of disregard for the immigration laws; section 2L1.1(b)(2) was adopted to allow the court to consider his sort of recidivism. The district court properly enhanced Cruz's offense level under section 2L1.1(b)(2).

## B. *Upward Departure*

The district court mentioned three possible grounds that warranted an upward departure from Cruz's Guideline range: (1) Cruz had access to a loaded handgun when he committed the offense; (2) his criminal history was underrepresented by his criminal history category; and, (3) the high speed chase exposed the aliens in his care to dangerous and inhumane treatment. We consider each ground below.

### 1. Access to Handgun

Cruz argues that the district court erroneously found that he possessed a loaded gun and used that finding as a basis for departing upward. It is not entirely clear that the district court actually made that finding.[2] We need not decide if it did because it clearly stated that the gun issue was of little or no importance. When addressing the issue the district judge declared:

> I will say to you candidly, the facts of this case, in my view, would warrant the departure greater than I've assessed,

---

1. We have used a different approach where prior or similar misconduct, rather than a prior offense, was under consideration. *See United States v. Leake,* 908 F.2d 550, 554 (9th Cir.1990); *United States v. Cota–Guerrero,* 907 F.2d 87, 89 n. 4 (9th Cir.1990).

2. We agree that under the facts of this case, where the gun was in a jacket pocket and there was no evidence of ownership or possession, any such finding would be very problematic. *See United States v. Kelso,* 942 F.2d 680, 682 (9th Cir.1991); *see also Delgado v. United States,* 327 F.2d 641, 642 (9th Cir.1964) (evidence of possession of marijuana found in a nightstand at the foot of co-defendants' bed was insufficient to convict either co-defendant because it was "pure speculation" as to which defendant had possession).

without the presence or viability of the weapon.... [The presence of the gun is] not that big of factor [sic] in the Court's reasoning. It's just one more straw throw [sic] into—into the bale.

Moreover, when summing up the reasons for the sentence the judge made no specific reference to the gun. Thus, we conclude that "on the record as a whole ... the error [if any] did not affect the district court's selection of the sentence imposed." *Williams v. United States*, — U.S. —, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992).

2. Inadequacy of Criminal History

■ The district court stated that among the matters it considered in deciding to depart upward was "the inadequacy of [Cruz's] criminal history category of—of 4." Cruz argues that the court improperly considered prior contacts with law enforcement which did not result in an arrest. *See* U.S.S.G. § 4A1.3 ("[A] prior arrest record itself shall not be considered [a ground for departure.]").

A sentencing court may depart upward from the defendant's guideline range "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." U.S.S.G. § 4A1.3. However, "an upward departure based on the inadequacy of a defendant's criminal history category is proper only in those limited circumstances where the defendant's criminal record is 'significantly more serious' than that of other defendants in the same category." *United States v. Streit*, 962 F.2d 894, 903 (9th Cir.1992).

The district court considered the fact that three bench warrants had been issued in different, unresolved state court matters; that Cruz had two convictions that were not factored into his criminal history calculation; and that Cruz had in the past given authorities ten aliases, nine dates of birth, and four social security numbers. All are permissible grounds for upward departure under section 4A1.3. *See* U.S.S.G. § 4A1.3(a) (prior sentences not

used in computing the criminal history category); U.S.S.G. § 4A1.3(d) (criminal matters pending in other tribunals when offense is committed); U.S.S.G. § 4A1.3(e) (prior similar adult conduct not resulting in a criminal conviction); *United States v. Montenegro–Rojo*, 908 F.2d 425, 428 (9th Cir.1990) (defendant's use of fictitious names is a permissible basis for upward departure); *see also United States v. Hernandez–Vasquez*, 884 F.2d 1314 (9th Cir. 1989) (defendant's use of aliases is proper ground for departure). Thus, departure on this ground was proper.

3. Application Note 8 to Section 2L1.1

■ The district court had the authority to depart upward under application note 8 to U.S.S.G. § 2L1.1 because of Cruz's dangerous treatment of the aliens. *United States v. Hernandez–Rodriguez*, 975 F.2d 622, 625–26 (9th Cir.1992). The record does not support Cruz's claim that the court increased his offense level by two points for each alien in his care. The court did not err in departing on this ground.

C. *Degree of Departure*

As outlined in part B, the district court mentioned three reasons for departure. One, access to a gun, was not relied upon. The other two, an inadequate criminal history and Cruz's treatment of the aliens during the chase, were properly relied upon. However, we are unable to review the reasonableness of the extent of the departure.

■ The district court departed upward by 12 months which is half again the maximum sentence in Cruz's guideline range. While the degree of departure does not appear excessive on its face and may be reasonable, the district court did not adequately state its reasons for the amount of the departure on the record. The court's decision "should include a reasoned explanation of the extent of the departure founded on the structure, standards and policies of the Act and Guidelines." *Lira–Barraza*, 941 F.2d at 751. *See also Montenegro–Rojo*, 908 F.2d at 431. We could

attempt to discern which of the various combinations of upward adjustment of offense characteristics and criminal history led the district court to impose this particular increase. That, however, would be mere speculation on our part and would not assure that sentencing was, in fact, carried out in a proper fashion. Even when the circumstances relied upon for departure are proper, if the reasons given for the extent of the departure are inadequate, we remand for resentencing so that the degree of the departure can be adequately explained. *United States v. Faulkner*, 952 F.2d 1066, 1071 (9th Cir.1991) (citing *United States v. Cervantes–Lucatero*, 889 F.2d 916, 919 (9th Cir.1989)).

We find the court's explanation for the extent of the departure inadequate, and thus we remand for resentencing. When resentencing the district court must "explain the extent of its upward departure by analogy to the guidelines...." *Streit*, 962 F.2d at 903. Any departure based on Cruz's underrepresented criminal history should be analogized to the guideline range for defendants with higher criminal histories. *See id.* at 905–908 (discussing possible analogies). The other grounds for departure must also be analogized to the Guidelines. *Lira–Barraza*, 941 F.2d at 745.

## CONCLUSION

The district court correctly determined that two points should be added to Cruz's offense level and that an upward departure was justified. However, we are unable to review its decision regarding the amount of that departure and are constrained to return the case for resentencing.

Therefore, we VACATE the sentence and REMAND for resentencing.