UNITED STATES of America,
Plaintiff–Appellee,

v.

Francisco MARTINEZ–CANO,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jorge MARTINEZ–CASTILLO,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Eduardo ARRENDONDO–MARTINEZ,
Defendant–Appellant.

Nos. 93–50257, 93–50266 and 93–50268.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 1993.

Decided Oct. 7, 1993.

Callie A. Glanton, Federal Public Defenders, Los Angeles, CA, for defendant-appellant Martinez–Cano.

Steven M. Cron, Santa Monica, CA, for defendant-appellant Martinez–Castillo.

Fred D. Heather, Paul Behrman, McKenna & Cuneo, Los Angeles, CA, for defendant-appellant Arrendondo–Martinez.

Steve Larson, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: NOONAN, FERNANDEZ, and KLEINFELD, Circuit Judges.

FERNANDEZ, Circuit Judge:

Francisco Martinez–Cano, Eduardo Arrendondo–Martinez, and Jorge Martinez–Castillo pled guilty to conspiracy to produce false identification documents. 18 U.S.C. §§ 371 and 1028(a)(1). They were sentenced under the 1992 version of the Sentencing Guidelines. The district court increased the base offense level for each of them by six points, based in part upon the number of documents involved. They appealed. We vacate the sentence, and direct that the district court's alternate determination of a proper sentence be entered as the judgment in this case.

## BACKGROUND FACTS

Immigration and Naturalization Service agents executed a search warrant at appellants' apartment and arrested them. The agents found 16 social security cards, six of which had names, 466 blank alien registration cards, and 58 blank temporary resident cards. All were counterfeit. The agents also found various pieces of equipment which are used to manufacture false identification documents. Appellants were indicted and pled guilty to conspiracy to produce false identification documents.

At sentencing it was agreed that the social security cards could be paired with the other documents. That, of course, made a total of 16 pairs. The probation officer was of the opinion that not only were the pairs sets of documents, but the number of individual documents should also be divided by two, which would dramatically increase the number of sets. The probation officer then opined that there were 270 sets. The government took the position that one document can be dubbed a set which would increase the number of sets still further. Appellants asked the district court to find a total of 16 sets and to determine the guideline sentence accordingly. It appears that the district court agreed with the appellants that only the pairs were sets. However, it determined that it would depart upward by four points because, as it said, the Commission had not adequately taken into account the fact that individuals may have a number of documents which do not constitute sets. It sentenced appellants accordingly and they appealed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

This court reviews the district court's decision to depart from the Guidelines under a tripartite test established in *United States v. Lira–Barraza*, 941 F.2d 745, 746–47 (9th Cir. 1991) (en banc); *United States v. Cruz–Ventura*, 979 F.2d 146, 148 (9th Cir.1992). "First, the district court's determination that an 'unusual circumstance' not adequately considered by the Guidelines permits departure is subject to de novo review. Second, the district court's factual findings supporting the existence of an identified circumstance permitting departure are reviewed for clear error. Finally, the extent of the departure is reviewed to determine whether it is 'reasonable' in light of the standards and policies incorporated in the Sentencing Reform Act and the Guidelines." *Cruz–Ventura*, 979 F.2d at 148 (citations omitted).

## DISCUSSION

The guideline for the offense in question appears rather straightforward on its face. It reads:

*Trafficking in Documents Relating to Naturalization, Citizenship, or Legal Resident Status; False Statement in Respect to the Citizenship or Immigration Status of Another; Fraudulent Marriage to Assist Alien to Evade Immigration Law*

(a) Base Offense Level: 9

(b) Specific Offense Characteristics

  (1) If the defendant committed the offense other than for profit, decrease by 3 levels.

  (2) If the offense involved six or more sets of documents, increase as follows:

| Number of Sets of Documents | Increase in Level |
|---|---|
| (A) 6–24 | add 2 |
| (B) 25–99 | add 4 |
| (C) 100 or more | add 6. |

U.S.S.G. § 2L2.1.

■ The government suggests that the guideline is not at all straightforward or clear and asks us to uphold the district court's decision on the basis that one document can be a set, or on the basis that the Sentencing Commission did not adequately consider the possibility of a defendant's having a number of documents that did not make up sets. That determination would bring section 5K2.0 into play. We disagree on both points.

### A. Guidelines § 2L2.1

As we have already said, section 2L2.1 seems clear on its face. It sets an initial base level of nine and then provides for an increase in that level by a certain number of points when certain numbers of sets of documents are involved. We can see no reason to read the word "sets" to mean "documents." In fact, to do so would require us to abuse normal English usage. Who would expect the Commission to say "Number of Sets of Documents" when it could accomplish the purpose the government argues for by simply leaving out the words "Sets of"? As Webster's New International Dictionary says, a set is "a number of things of the same kind ordinarily used together," or "a number of things naturally connected by location," or "a group formed by classification." *Webster's New International Dictionary* (2d ed. 1958). The American Heritage Dictionary of

the English Language is to the same effect. It defines a set as "a group of things of the same kind that belong together and are so used...." *American Heritage Dictionary* (3d ed. 1992). We are confident that the Commission used the word in just that way. We do recognize the government's point that "one" is a number. We also recognize that in mathematics a set can consist of a single item, or of no item at all. Again, we see no reason for the Commission to resort to that kind of circumlocution if it desired to increase guideline scores based upon the number of single documents rather than upon the number of groups of documents. The government suggests that perhaps the Commission meant to key on the number of persons who could use the documents. In order to so hold we would have to decide that the Commission used a very roundabout way of accomplishing that goal.

Of course, we have also considered the possibility that the Application Notes would cast light on the Commission's intent. Both we and the Supreme Court have declared that to be a proper and necessary procedure. *See Stinson v. United States,* — U.S. —, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); *United States v. Anderson,* 942 F.2d 606 (9th Cir.1991) (en banc).

■ As we said in *Anderson,* courts should always consider the commentary, "regardless of how clear the guideline may appear on its face." 942 F.2d at 612. We should also "construe a guideline and its commentary so as to be consistent, if that is possible." *Id.* But if it cannot be so construed, the guideline must prevail. *Id.* at 613. Thus encouraged and enjoined we have turned to Application Note 2, which reads: "Where it is established that multiple documents are part of a set intended for use by a single person, treat the set as one document."

Unfortunately, far from clarifying or aiding in the construction of the guideline, the Application Note, taken in context and read with the guideline, is virtually unintelligible. It says that a set is to be treated as a single document. But the guideline itself only increases the points based upon sets. If a set

is a single document, section 2L2.1(b)(2) could never be applied because one could never have a set. Rather, as soon as one thought one had a set it would metamorphose into a single document only. Thus, the note is in inexorable conflict with the guideline to which it is attached. It is as if the Commission had originally decided to have the first heading under section 2L2.1(b)(2) read "Number of Documents" and then decided to ameliorate that with Application Note 2 by treating a set of documents as a single one. If so, the Commission unaccountably changed its mind and decided to have the guideline heading refer to sets of documents. The government would have us resolve the conflict by striking the words "Sets of" from the guideline itself. We cannot do that. What we can and must do is disregard the note in this peculiar instance.

Thus, we are left with the conclusion that the district court did not err when it determined that there were only 16 sets of documents involved in this case.

### B. Guidelines § 5K2.0.

■ The district court held that the Commission had not adequately considered the possibility that the defendants might have a number of documents which were not formed into sets. On that basis, it departed. In that the court erred.

It appears to us that the Commission was aware of the difference between single documents and sets of documents, and considered both of those in constructing section 2L2.1. Before the 1992 amendment, the guideline did not include any reference whatever to the number of papers that might be involved in a given case. See U.S.S.G. § 2L2.1 (1991). Under that regime, it could be argued that the Commission had not considered the possibility that there would be numerous documents. But when the 1992 amendments were adopted the Commission of necessity recognized that there could be single documents or sets or both. It chose to increase the number of points based upon sets alone. We are in no position to speculate on the reasons for that choice, although it *is* pellucid

that a person who has (or conspires to have) a full usable set of documents is in a better position to profit and to do harm than a person who merely has one part of a set. That the Commission's choice was a reasoned one is underscored by the fact that the Commission was, no doubt, aware of 18 U.S.C. § 1028(b), which increases the possible penalty when five or more documents are involved. The Commission, nevertheless, chose to key on sets rather than on individual documents. In other words, the plain language of the guideline shows that the Commission did take the number of documents into account when it drafted section 2L2.1. Departure on the ground that it did not consider numbers of documents would not be appropriate. See *United States v. Miller,* 991 F.2d 552, 553 (9th Cir.1993); *United States v. Martin,* 938 F.2d 162, 163–63 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992).

■ In unusual circumstances a departure can be appropriate even though the Commission has taken a particular factor into account in some fashion. See 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. But where a factor has been taken into account it must be found to be present "to a degree substantially in excess of that which ordinarily is involved in the offense." *Id.* Here, however, the district court did not point to anything unusual or extraordinary in the number of documents involved. While we do not hold that there never could be an unusual case which warranted departure from this guideline, the record does not demonstrate that this is that case. Thus, we must vacate the judgment which determined that it was.

■ However, mindful of our decision in *United States v. Medina,* 940 F.2d 1247, 1253 (9th Cir.1991), the learned district judge also issued alternate sentencing determinations which used the guideline ranges that would apply if there were not the four point addition to the appellants' guideline scores which the district court departure wrought. In the case of Martinez–Cano, the alternate sentence determination provides for a sentence of 10 months;[1] in the case of Arrendondo–

---

1. Martinez–Cano also attempts to appeal from    the district court's discretionary refusal to depart

Martinez, it provides for a sentence of 14 months; and in the case of Martinez–Castillo, it provides for a sentence of 10 months. Because it appears that the judgments themselves require amendment, the district court shall so amend them upon the issuance of the mandates in these cases.

## CONCLUSION

We have determined that when the Commission said that points were to be added to defendants' guideline scores when they had a "Number of Sets of Documents" it meant just *that* rather than "Number of Documents." We have also determined that there was nothing unusual enough about this case to confer upon the district court the authority to depart from the Guidelines. Thus, we vacate the judgment actually imposed and remand for the entry of judgment using the district court's alternate sentence determinations.

VACATED and REMANDED.

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent, and would affirm. The question resolves into "what is a set?"[1] Construed in light of its purpose, the language of § 2L2.1(b)(2) and application note 2 is intelligible and rational. Though the district court articulated its sentence as a departure, I would hold that the same sentence was required without a departure, under a proper reading of the guidelines.

The conspirators in this case were caught with the following counterfeit cards:

16 social security cards

466 alien registration cards

58 temporary resident cards

---

540 TOTAL

Should the conspirators be sentenced on the basis of only 16 "sets" of cards, as the majority concludes, or on the basis of a higher number, as the district judge and I conclude?

The answer turns on the meaning of "set." The guidelines, properly interpreted in light of their purpose, require a longer sentence because the conspirators engaged in more extensive criminal activity than persons caught with only 16 social security cards and 16 temporary resident or alien registration cards.

The majority opinion concedes that the word "set" has multiple meanings, some of which would allow single member sets. My *Webster's Third New International Dictionary—Unabridged* (1981) has three columns of fine print defining "set," with 47 definitions just for the noun usage. This is not to say that the word has no meaning or that the meaning is entirely indeterminate. Like many English words, the word "set" has a group of meanings, but context and purpose generally imply one particular meaning in a sentence using the word. Some meanings connote the plural, but some do not. If we choose a definition of "set" requiring that a set have more than one document, then the guideline and note cannot be reconciled. But if we choose a definition allowing a set to have one or more documents, then the guideline and note fit together with each other and the statute. The construction rendering the Commissioners' usage absurd is not necessary, so we should abjure it. *See United States v. Anderson,* 942 F.2d 606, 612 (9th Cir.1991) (en banc) ("courts should construe a guideline and its commentary so as to be consistent, if that is possible.").

The method of construing a sentencing guideline resembles in this respect that used for construing a statute. *See Stinson v. United States,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Statutory construction must begin from the premise that the people who drafted the language we construe are themselves rational; we should not easily be led to a construction which implies that they are fools. My approach to construing the statute follows neither the literalistic dic-

---

downward for what Martinez calls his extraordinary acceptance of responsibility. We have no jurisdiction to review that discretionary decision. *United States v. Morales,* 898 F.2d 99, 102 (9th Cir.1990).

1. I agree with the majority that we have no jurisdiction to review the district court's discretionary refusal grant Martinez–Cano a downward departure for "extraordinary acceptance of responsibility."

tionary definition approach now popular in some circles, nor the technique, popular in others, of treating the words as having no meaning and looking instead to the values underlying the language to be construed so that we can create law effectuating those values. If we assume, as we must, that rational people adopted the words, that implies that a construction is probably erroneous if it treats the words as nonsense.

When the majority works out the implications of a construction requiring sets to have more than one document, so that application note 2 is "virtually unintelligible," that suggests to me that we should try out a different construction. It is our obligation to construe the guideline and note consistently if possible. *See Anderson*, 942 F.2d at 612. If by the construction of "sets" chosen by the majority, "the note is in inexorable conflict with the guideline," we should see whether another construction consistent with the meanings and purposes of the words avoids that conflict.

Like many of the richer words in our language, the words of the guideline and note have a determinate meaning, but finding the meaning requires consideration of the purpose for which they were written. *See* H. Hart & A. Sacks, *The Legal Process: Basic Problems in the Making and Application of Law* 1214–15, 1411 (tent. ed. 1958); *cf. Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1311 (9th Cir.1992) ("We must examine the meaning of the words to see whether one construction makes more sense than the other as a means of attributing a rational purpose to Congress."). In *Cabell v. Markham*, 148 F.2d 737 (2d Cir.1945), Judge Learned Hand explained the purposive approach to statutory interpretation:

> Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish,

whose sympathetic and imaginative discovery is the surest guide to their meaning. 148 F.2d at 737. Reading the words of the guideline and application note in light of their purpose, I would hold that the number of sets should be determined by focusing on the number of people who will receive the documents rather than the number of complete sets of multiple documents.

Congress made the crimes and punishments relating to false identification documents depend on the number of "documents." 18 U.S.C. § 1028. The statute refers to the number of documents twice:

> § 1028. Fraud and related activity in connection with identification documents.
>
> (a) Whoever ...
>
> > (3) knowingly possesses with intent to use unlawfully or transfer unlawfully *five or more* identification documents (other than those issued lawfully for the use of the possessor) or false identification documents;
>
> or attempts to do so, shall be punished as provided in subsection (b) of this section.
>
> (b) The punishment for an offense under subsection (a) of this section is—
>
> > (1) a fine of not more than $25,000 or imprisonment for not more than five years, or both, if the offense is—
>
> > > (B) the production or transfer of *more than five* identification documents or false identification documents;
>
> > (2) a fine of not more than $15,000 or imprisonment for not more than three years, or both, if the offense is—
>
> > > (A) any other production or transfer of an identification document or false identification document....
>
> (d) As used in this section—
>
> > (1) the term "identification document" means a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a foreign government,

political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of *identification of individuals;*

. . . .

18 U.S.C. § 1028 (emphasis added).

Why would Congress refer to "five or more" or "more than five" "identification documents" as the measure of whether unlawful possession is criminal, and whether the maximum sentence should be five years or three years for production or transfer? The answer can be inferred from the statutory definition of "identification document." The definition shows that the congressional purpose relates to false "identification of individuals." In practical terms, the statutory distinction punishes less harshly those who possess or transfer one or a few documents for use by themselves and up to four other individuals, than those who do it for larger numbers of individuals. The distinction in degree of criminality relates to the number of people who, if the crime succeeded, would be enabled to pass themselves off falsely by means of the documents.

The word "set" comes from the guidelines, not the statute. The Commissioners used "six or more sets," instead of the statutory term, "more than five identification documents." But the statutory term, "document," has not disappeared—the guideline and commentary read, in relevant part:

§ 2L2.1. Trafficking in *Documents* Relating to Naturalization, Citizenship, or Legal Resident Status; False Statement in Respect to the Citizenship or Immigration Status of Another; Fraudulent Marriage to Assist Alien to Evade Immigration Law

(a) Base Offense Level: 9

(b) Specific Offense Characteristics

. . . . .

(2) If the offense involved *six or more sets of documents,* increase as follows:

| Number of Sets of Documents | | Increase in Level |
|---|---|---|
| (A) | 6–24 | add 2 |
| (B) | 25–99 | add 4 |
| (C) | 100 or more | add 6. |

Commentary

Application Notes:

. . . . .

2. Where it is established that multiple *documents* are part of a *set* intended for use by a single person, *treat the set as one document.*

U.S.S.G. § 2L2.1 (1992) (emphasis added). If the word "set" necessarily connotes the plural, then the note and guideline make no sense, and trafficking in vast numbers of documents would generate the same offense level as providing a single card to a family member. Application note 2 says to treat a set as a document, yet the guideline provides for no increases in offense level for documents, only sets.

If read as a command designed to accomplish the purpose of the statute, the language of the guideline is intelligible and sensible. The word "set" is used as a mitigating device, so that sentences are in some circumstances more lenient for people whose number of documents is greater than the number of people who could use the documents. In this context, "set" denotes one or more identification documents for use by a single individual.

Suppose illegal alien H has a wife, W, and three brothers, B1, B2, and B3. For each of his family members, H buys a counterfeit social security card and a counterfeit alien registration card with the person's name typed in.[2] He gets caught while he still possesses all ten cards. Should he be punished as a possessor of ten documents, or as a facilitator of immigration fraud by five people? The Commissioners could discern from the statutory definition of "identification document," as we can, that the congressional purpose had to do with "identification of individuals." Once this purpose is considered, application note 2 makes sense—it miti-

---

**2.** Both parties and the district court accepted the probation officer's conclusion that "[i]n many cases involving false identification documents, immigration documents are often sold in tandem with Social Security identification cards."

gates H's punishment, because he provided for false identification of only five individuals, not ten. The two documents for W, for example, are part of a set intended for use only by that single individual, so they are counted as only one set.

Now suppose that H bought counterfeit social security cards for six individuals, himself, his wife, his three brothers, and his cousin C, but his supplier ran short of alien registration cards. He has eleven cards. For H, W, B1, B2 and B3, he has complete sets, social security and alien registration cards. But he has only a social security card and no alien registration card for C. Should H get the two level increase for six or more sets of documents, or be punished for only five because the set for C is incomplete and only a single card? I think so, but the majority view would be no two level increase.[3] The statutory punishment aggravator says "more than five identification documents," and defines "identification documents" as papers "for the purpose of identification of individuals." The guideline says to treat multiple documents "intended for use by a single person" as a single document. Six is more consistent with the purpose of the statute and guideline, because the eleven cards are intended for use by six individuals. Application note 2 commands that H be punished on the basis of six sets of documents.

The district court counted the 540 identification cards seized as 16 sets, then departed upward four levels because of the additional cards. The majority opinion would have the sentences reflective only of the 16 sets, and not the remaining 508 cards, as though the conspirators were enabling only 16 people, not hundreds more, to pass themselves off as entitled to live and work in the United States. The district judge's application of the guideline, which to this point we all agree with, would treat 16 social security cards and sixteen of the additional cards as intended for use by sixteen people. None of the remaining 508 cards were "part of a set intended for use by a single person," so the mitigator for sets in application note 2 cannot rescue the conspirators from the full effect.

They were providing for at least 524 illegal immigrants, albeit imperfectly, not just a few family members or close friends.

The guideline says to add six levels for "100 or more" sets of documents, so under § 2L2.1, the conspirators get the offense level of 15 for large scale traffickers, not the level of 11 for traffickers providing for no more than 24 illegal aliens. The district judge called his analysis a departure upward four levels, but the guidelines required the additional four level increase, so the sentence should be affirmed as a guideline sentence rather than as a departure. Since we can affirm the district court on any grounds supported by the record, *Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir.1987), I would affirm the sentences imposed by the district court.

---

**3.** Would it matter if it took three cards to make a complete set and H had only two of the cards for C? The majority analysis would appear to distinguish that case, and increase the offense level by two, because C's set had more than one card. But that distinction should make no difference, because it has no relationship to the purpose of the statute and guideline.