5 F.3d 543
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Rodimiro ROJAS-OQUITA, Defendant-Appellant.
 No. 92-10348.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 1993.
Decided Aug. 25, 1993.
 
 1
 Appeal from the United States District Court for the District of Arizona; No. CR-88-00329-01-AC, Alfredo C. Marquez, District Judge, Presiding.
 
 
 2
 D.Ariz., 940 F.2d 1247.
 
 
 3
 AFFIRMED.
 
 
 4
 Before: POOLE, FERNANDEZ, Circuit Judges, and KELLEHER, Senior District Judge*
 
 
 5
 MEMORANDUM**
 
 
 6
 Rodimiro Rojas-Oquita appeals the district court's denial of his motion for a new trial under Federal Rule of Criminal Procedure 33. Rojas-Oquita had been convicted of 14 counts of various drug related offenses.[1] Rojas-Oquita claims that following his trial it was disclosed, during an unrelated federal drug case,[2] that John Becerra, the confidential informant who had testified against him, had been arrested by state police for possession of cocaine and a weapon within a few days after he had finished testifying in the Rojas-Oquita trial. The crux of Rojas-Oquita's appeal is that Brady v. Maryland,[3] mandated the disclosure of the arrest during his trial because its impeachment value was material to establishing his innocence. However, he fails to offer any persuasive explanation of how Becerra's testimony was especially salient to any of the particular charges at issue on this appeal.
 
 
 7
 Rojas-Oquita merely argues that the evidence of Becerra's arrest was Brady material because it would have provided an additional source for impeaching Becerra as a cocaine user or dealer at the time he was working as a confidential informant. While evidence which bears solely on a witness' credibility may qualify as Brady material, a new trial is required only if " 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury....' " Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (citation omitted); United States v. Diaz-Rodriguez, 478 F.2d 1005, 1008 (9th Cir.), cert. denied, 412 U.S. 964, 93 S.Ct. 3024, 37 L.Ed.2d 1013 (1973).
 
 
 8
 In United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985), the Supreme Court explained that where, as here, the district court did not limit the defendant's right to cross-examine the witness, the conviction shall be reversed "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." A plurality then went on to further define Brady's materiality standard. Where potential Brady evidence is discovered after trial, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id., 473 U.S. at 682, 105 S.Ct. at 3383; United States v. Brumel-Alvarez, No. 89-50412, slip op. 3971, 3992-93 (9th Cir. Apr. 22, 1993). "We have closely followed this formulation of the materiality test." United States v. Marashi, 913 F.2d 724, 732 (9th Cir.1990).
 
 
 9
 On the other hand, to prevail on a Rule 33 motion the defendant must satisfy a five-part test which includes a requirement that the evidence indicate that a new trial would probably result in acquittal. United States v. Kulczyk, 931 F.2d 542, 548 (9th Cir.1991).
 
 
 10
 The district court order indicates that it focused solely on the fifth element and found that the evidence of Becerra's arrest did not rise to the level that "would probably produce an acquittal." The district court did not expressly determine whether the proffered evidence was material under Brady. We recognize that the Brady standard is "stricter than the harmless-error standard but more lenient to the defense than the newly-discovered-evidence standard." Bagley, 473 U.S. at 680-81, 105 S.Ct. at 3383. Nevertheless, in this case application of either standard would yield the same result.
 
 
 11
 Suppression of evidence concerning Becerra's arrest would not have reasonably affected the verdict. Even without that evidence, Rojas-Oquita had already established that Becerra was a major drug dealer before he became a confidential informant and that he had used cocaine after having been paroled. Certainly, evidence that he was arrested for possession during the trial itself would have negatively affected the jury's view of Becerra's character, but not in a decisive way, since it is very unlikely that the jury believed Becerra was drug free--or particularly honest--to begin with.
 
 
 12
 Becerra's testimony had no direct relevance to the eight telephone counts based on conversations which occurred in December of 1987 (counts 12-19). While the evidence of the telephone conversations between Becerra and Rojas-Oquita was relevant as to the other counts, it was mainly Rojas-Oquita's own statements to Becerra which showed that he was involved in arranging drug transactions. The jury did not have to rely on Becerra to translate "shrimp" into "cocaine." There was plenty of independent evidence to show that a cocaine--rather than a seafood--deal took place on November 30. Even if Becerra had been impeached with the arrest, it is extremely unlikely that the jury would have believed that Rojas-Oquita understood that they were engaged in a seafood transaction.
 
 
 13
 Thus, this matter is much like Diaz-Rodriguez, where we affirmed the denial of a new trial motion grounded on an alleged Brady violation because the newly discovered evidence would have been used mainly for impeachment and there was independent evidence to corroborate the substantive allegations. 478 F.2d at 1008; see also Marashi, 913 F.2d at 733 (no Brady violation where the information was "only cumulative impeachment evidence"). Moreover, this case is distinguishable from United States v. Bernal-Obeso, No. 91-50796, slip op. 2863 (9th Cir. March 29, 1993), because Rojas-Oquita was allowed to cross-examine Becerra on his prior drug use. Review of the record shows that the allegedly suppressed evidence would have been merely cumulative impeachment evidence in a case which did not predominantly rest on the informant's testimony.
 
 
 14
 AFFIRMED.
 
 
 
 *
 Hon. Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Rojas-Oquita was originally convicted of engaging in a continuing criminal enterprise (21 U.S.C. Sec. 848) [count 1]; aiding and abetting the importation of cocaine (18 U.S.C. Sec. 2 and 21 U.S.C. Secs. 952(a), 960) [count 5]; aiding and abetting the distribution of cocaine (18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 841) [count 8]; and nine counts of using a telephone to facilitate the distribution of cocaine (21 U.S.C. Sec. 843(b)) [counts 4, 12-19]. We reversed the two conspiracy convictions [counts 2 and 6] in United States v. Medina, 940 F.2d 1247 (9th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992)
 
 
 [2]
 United States v. Barrera-Moreno, 951 F.2d 1089 (9th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992)
 
 
 [3]
 "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment...." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963)